A91A1709, A91A1710. FEDERAL INSURANCE COMPANY v. NATIONAL DISTRIBUTING COMPANY, INC.; and vice versa.

(417 SE2d 671)

BEASLEY, Judge.

National Distributing Company sued its commercial umbrella liability insurer, Federal Insurance Company, for refusing to indemnify it against a punitive damage claim, asserted against National in litigation in Florida arising from the commission of a tort in Florida. In Case No. A91A1709, Federal appeals the trial court's grant of National's motion for partial summary judgment and its denial of Federal's motion for summary judgment. In Case No. A91A1710, National cross-appeals the trial court's failure to enter judgment in stated monetary amounts for various damage claims asserted by National against Federal.

*The facts*

National, a wholesale distributor of alcoholic beverages, is a Georgia corporation with its principal place of business in Atlanta. Federal is a New Jersey corporation transacting business in Georgia through an Atlanta office. National's one-year policy with Federal became effective on April 1, 1983. Oberdorfer, an independent insurance agency with its office in Atlanta, solicited and negotiated the policy with Federal through telephone conversations, with all parties physically present in Atlanta. The policy was delivered to National in Atlanta, National sent a check for the premium payment to Oberdorfer in Atlanta, and Oberdorfer forwarded the premium payment to Federal in Atlanta.

The insurance policy names National as the insured, Federal as the umbrella insurer, and Fireman's Fund as the primary or underlying insurance carrier. An endorsement names 36 additional "named

Insureds" located in Georgia, Florida, North Carolina, Virginia, California, and Colorado. Most of the additional named insureds are distributing companies. Seven of the named insureds are located in Florida.

In 1984, William Cason, a Florida resident, was employed by National as a salesman in the area of Pensacola, Florida. He solicited orders from bars, lounges, restaurants, and package stores in the Pensacola area and transmitted these orders to National's central computer center in Jacksonville. In turn, the orders were conveyed to National's warehouse in Pensacola, which shipped the liquor and invoices to the Florida buyers.

On March 20, 1984, Cason caused an automobile accident near Destin, Florida, in which Helen Hurst and others were injured. At the time of the accident Hurst was a college student residing in Georgia, and she is still a Georgia resident. She brought suit in Florida against National, Cason, and Gordon Davis, who was Cason's sales manager. The Hurst suit, and others arising from this automobile accident, were defended by Fireman's Fund.

Hurst sought punitive damages against National on grounds that it was vicariously liable for Cason's aggravated conduct and that it was directly liable for its own aggravated conduct in hiring and/or retaining Cason. However, "Florida public policy prohibits liability insurance coverage for punitive damages assessed against a person because of his own wrongful conduct. [Cits.] The Florida policy of allowing punitive damages to punish and deter those guilty of aggravated misconduct would be frustrated if such damages were covered by liability insurance." *U. S. Concrete Pipe Co. v. Bould*, 437 S2d 1061, 1064 (3) (Fla. 1983). For this reason, Federal notified National that it would not be liable for any direct punitive damages awarded Hurst in the Florida litigation, although there might be coverage for imposition of punitive damages based on vicarious liability. Federal suggested that National obtain independent counsel in the Hurst case, which National did.

On the advice of independent counsel, National settled Hurst's direct punitive damage claim for $1 million on April 23, 1987. At that time, National's primary liability insurance had been exhausted. Under the settlement agreement, National was to pay Hurst the sum of $200,000 upon execution of the agreement and thereafter the sum of $50,000 quarterly, plus interest on the unpaid balance at 7.5 percent per annum, for four consecutive years until payment of the principal sum of $1,000,000. She later settled her remaining damage claims against National and its employees for $3 million, which was paid by Federal. Payments under the settlement agreement have been made to Hurst in Georgia.

On February 9, 1990, National instituted this action against Fed-

eral, alleging that it had made demand on Federal to indemnify it for payment of the $1 million to Hurst, and its failure and refusal to do so constituted a breach of contract, wherefore National sought reimbursement for: sums paid to Hurst to date (which totalled $864,883 in principal and interest), sums to be paid her in the future, pre-judgment and post-judgment interest, statutory bad faith penalties, and attorney fees incurred in the Hurst action and in this action.

Federal filed a motion for summary judgment on grounds that Florida tort law applies to the present controversy and under Florida law a defendant is prohibited, as a matter of public policy, from obtaining reimbursement or indemnification for punitive damages resulting from the defendant's own wilful or wanton acts; alternatively, if Georgia law applies, the insuring of punitive damages is currently against Georgia public policy.

National filed a cross-motion for partial summary judgment on grounds that it is entitled to judgment as a matter of law on all issues arising out of this litigation except the issue of its entitlement to recovery of reasonable attorney fees in prosecuting this action.

### The law

The traditional method of resolving choice-of-law issues is through a tripartite set of rules, which are lex loci contractus, lex loci delicti, and lex fori. Under the rule of lex loci contractus, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply. *General Elec. Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 349 (2) (309 SE2d 152) (1983). Under the rule of lex loci delicti, tort cases are governed by the substantive law of the state where the tort was committed. *Ohio Southern Express Co. v. Beeler*, 110 Ga. App. 867, 868 (1) (140 SE2d 235) (1965). Under the rule of lex fori, procedural or remedial questions are governed by the law of the forum, the state in which the action is brought. *Menendez v. Perishable Distrib.*, 254 Ga. 300 (329 SE2d 149) (1985).

In lieu of the lex loci contractus rule, the Restatement (Second) of Conflicts, § 188 (1971) applies a multi-factor "center of gravity" or "grouping of contacts" test, which takes into consideration: the place of contracting; the place of negotiation; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties. In several jurisdictions, including Georgia and Florida, the Restatement approach has been rejected so far and the traditional method retained. *General Tel. Co. of the Southeast v. Trimm*, 252

Ga. 95 (311 SE2d 460) (1984); *Sturiano v. Brooks*, 523 S2d 1126, 1128 (4, 5) (Fla. 1988).

Even if an application of these rules renders the law of another state applicable, the forum, within constitutional limits, is not required to give the law of another state extra-territorial effect. That is only done as a matter of courtesy or comity, which will not be enforced if the law of the other state contravenes the public policy of the forum. See OCGA § 1-3-9; *Commercial Credit Plan v. Parker*, 152 Ga. App. 409 (263 SE2d 220) (1979).

### Trial court's order

The trial court concluded that the insurer's liability to the insured is governed by Georgia law under the rule of lex loci contractus, since this is an action on an insurance contract and not a tort action, and under the rule of lex fori, since the question here is one of damages which is a matter of remedy or procedure. It also gratuitously found that under the multi-factor test of the Restatement, Georgia has the most significant contacts.

The trial court also held that Georgia would not follow Florida's public policy, contained in its case law, against the insurability of punitive damages. It further held that Georgia's Tort Reform Act of 1987 implicitly sanctions the insurability of punitive damages, and the application in this case of the Florida rule disallowing insurance coverage for punitive damages would violate the public policy of Georgia, as contained in its statutory law, allowing such coverage.

For these reasons, the trial court ruled that National has a right of indemnity from Federal for sums paid in settlement of Hurst's direct punitive-damage claim. On February 11, 1991, the trial court entered an order granting summary judgment on all issues to plaintiff and denying summary judgment on all issues to the defendant. National's final payment to Hurst under the settlement agreement was May 5, 1991.

### The appeal

1. The starting point is that this is a suit concerning the contractual rights of a Georgia insured and the obligations of an insurer transacting business, including the contract, in Georgia. Under the rule of lex loci contractus, these issues, including the question of whether insurance coverage for punitive damages violates public policy, are to be determined by the substantive law of Georgia. See *GEICO v. Dickey*, 255 Ga. 661 (340 SE2d 595) (1986); *Andrews v. Continental Ins. Co.*, 444 S2d 479 (Fla. App. 1984); *Northwestern Nat. Cas. Co. v. McNulty*, 307 F2d 432, 434 (2, 4) (5th Cir. 1962).

The language of the policy provides coverage for punitive dam-

ages, and there is no exclusion from liability if punitive damages arise from occurrences or transactions in a state in which insurance coverage for punitive damages contravenes public policy. See *GEICO v. Dickey*, supra.

There is no choice-of-law provision in the insurance policy, and numerous of the other insureds are in other states. Under the circumstances, the law imports a presumption that the parties intended their contract to be interpreted in accordance with Georgia law. See *GEICO*, supra; *Dacosta v. Allstate Ins. Co.*, 188 Ga. App. 10 (372 SE2d 7) (1988); *American Family Life Assur. Co. v. United States Fire Co.*, 885 F2d 826, 833 (12) (11th Cir. 1989); *Sturiano v. Brooks*, supra; compare *Grand Sheet Metals Prods. Co. v. Aetna Cas. &c. Co.*, 500 FSupp. 904, 908 (4, 5) (D.C. Conn. 1980).

"Learned scholars have pointed out that insurance contracts often have no particular place where performance is contemplated. Thus, it appears reasonable to apply the law of the place where the contract was made. Stated more precisely: 'The insurance contract is constructively made at the place where the contract is delivered.' [Cits.] As was pronounced in *Missouri &c. Ins. Co. v. Lovelace*, 1 Ga. App. 446, 465 (4) (58 SE 737): 'Parties are presumed to contract with reference to the place of the contract. If it is valid there, it is valid everywhere.' See *Trustees of Williams Hosp. v. Nisbet*, 189 Ga. 807, 811 (1) (7 SE2d 737). . . .' [Cit.]" *General Elec. Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 350 (2b) (309 SE2d 152) (1983). "It is unreasonable to require that an insured research the tort law of each state as he crosses its borders. When an insured purchases a policy of automobile insurance in Georgia which gives him protection against liability in Georgia, he is entitled to the same protection when he crosses into another state." *GEICO*, supra at 662.

For these reasons, we reject the argument that the substantive law of Florida applies on the theory that Florida was the place where the contract was performed. The contract was made in Georgia, because that is "where the last act essential to the completion of the contract was done," and where it was *made* controls. *General Southeast Tel. Co.*, supra. Appellant acknowledges that the contract was executed in Georgia. Payment of the claim, i.e., performance, also occurred in Georgia.

Contrary to what the trial court held, the issues in this case concern the substantive contractual rights and obligations of the parties and not questions of remedy or procedure. Compare *Joice v. Scales*, 18 Ga. 725 (1) (1855) (cited in *General Elec.*, supra).

2. Since the injured party in this case is a Georgia resident, compare *Cunninghame v. Equitable Life Assur. Society of the United States*, 652 F2d 306 (1) (2d Cir. 1981), we likewise reject Federal's argument that we should afford comity to Florida's public policy in

deterring aggravated conduct in that state by disallowing insurance coverage for punitive damages. Florida's public policy is not paramount. This case involves a Georgia corporation's liability to a Georgia resident, so the public policy of Georgia is superior to that of Florida. See *General Motors Corp. v. Nat. Auto Radiator Mfg. Co.*, 694 F2d 1050 (6th Cir. 1982); *Andrews*, supra. Georgia's public policy concerns are the protection of both the injured party and the insured. See *GEICO*, supra. This case, as others, turns on its own particulars.

For the reasons given in Division 1 and in this Division, application of the lex loci contractus rule would yield the same result under the Restatement "grouping of contacts" approach.

3. In *Greenwood Cemetery v. Travelers Indem. Co.*, 238 Ga. 313, 316 (232 SE2d 910) (1977), it was argued that contracts which insure against punitive damages are illegal as a matter of public policy, because the deterrent effect of punitive damages is lost when such damages are paid by the insurer. The Supreme Court rejected this argument, holding that this question had been resolved by the legislature through its enactment of former Code Ann. § 56-408 (1), authorizing insurance against legal liability without limitation, and former Code Ann. § 56-408 (11) authorizing miscellaneous insurance if such insurance is not disapproved by the commissioner as being contrary to law or public policy. These Acts, now OCGA § 33-7-3 (1) and (11), are still in force, and there is no evidence that there has been any change in administrative regulations since the *Greenwood* decision.

When *Greenwood* was decided, former Code Ann. § 105-2002 (OCGA § 51-12-5) authorized the imposition of punitive damages to deter the wrongdoer and as compensation for the wounded feelings of the plaintiff. The so-called Tort Reform Act of 1987 provides that, "[p]unitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." OCGA § 51-12-5.1 (c). Because of this change in the law, Federal argues that insurance coverage for punitive damages is now against Georgia public policy. Given *Greenwood*'s rationale, however, this change in the law provides an insufficient basis to rule that *Greenwood*'s holding has been legislatively superseded.

*Cross-appeal*

4. National contends that the trial court erred in not including in its judgment: (1) a stated undisputed unliquidated damage of $1 million; (2) $266,575.34 for pre-judgment interest on the liquidated sum of $1 million (from April 23, 1987 to February 11, 1991, the date of judgment), as authorized by OCGA § 7-4-15; and (3) $250,000 as a bad-faith penalty under OCGA § 33-4-6.

Federal states without contradiction that at a post-judgment

hearing on a motion for supersedeas bond filed by National, which motion was later withdrawn, the trial court stated that it had intended to award summary judgment in favor of National on the issue of liability only, because it did not feel that National's damages had been proven.

On the present record, National is not entitled to bad faith penalties as claimed. "To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. [Cits.] 'A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action.' [Cits.] 'Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and there is a disputed question of fact.' [Cit.]" *Central Nat. Ins. Co. of Omaha v. Dixon*, 188 Ga. App. 680, 683 (5) (373 SE2d 849) (1988). Where there is a doubtful question of law, the insurer is not liable for bad faith penalties. *Allstate Ins. Co. v. Ammons*, 163 Ga. App. 385, 386-387 (2) (294 SE2d 610) (1982).

Nor is National entitled to pre-judgment interest under OCGA § 7-4-15, which applies to liquidated demands. The amount is unliquidated where, as here, there is a bona fide dispute as to principal indebtedness. *Arora v. Thakrar*, 187 Ga. App. 170 (369 SE2d 524) (1988).

However, based on our resolution of the issues presented in the main appeal, National is entitled to have Federal reimburse National for its $1 million payment to Hurst in settlement of Hurst's claim. In moving for summary judgment, National showed that its $1 million settlement of Hurst's direct punitive damage claim was reasonable. Federal presented no rebuttal evidence on this point. Consequently, National was entitled to summary judgment on this issue. See *Cochran v. Southern Business Univ.*, 110 Ga. App. 666 (1) (139 SE2d 400) (1964).

National is now entitled to recover the $1 million in payment of principal under the settlement agreement, and the trial court is directed to enter judgment in favor of National in that amount. See *Beneficial Standard Life Ins. Co. v. Hamby*, 142 Ga. App. 449, 451 (4) (236 SE2d 116) (1977).

*Judgment affirmed in Case No. A91A1709. Judgment affirmed in part and reversed in part in Case No. A91A1710. Sognier, C. J., and Carley, P. J., concur.*

DECIDED MARCH 10, 1992 —
RECONSIDERATION DENIED APRIL 3, 1992 — 

Lord, Bissell & Brook, David M. Leonard, for appellant.

*Freeman & Hawkins, Edward M. Newsom, Albert H. Parnell, Barry S. Noeltner,* for appellee.