Hugh COLLINS; Max Collins; Matt Mullis; Dairy Queen of Powder Springs, Inc.; T–Jazier, Inc.; and Dairy Queen and Brazier of Eastman, Inc., Plaintiffs,

v.

INTERNATIONAL DAIRY QUEEN, INC. and American Dairy Queen Corporation, Defendants.

Civil Action File No. 94–95–4–MAC(WDO).

United States District Court, M.D. Georgia, Macon Division.

Aug. 30, 1996.

William Camp Harris, John Elvis James, Lisa Neill–Beckmann, Macon, GA, Diane Green Smith, and Lee Abrams, Chicago, IL, for plaintiffs.

Benjamin M. Garland, F. Kennedy Hall, Macon, GA, William L. Killion, and Quentin R. Wittrock, Minneapolis, MN, for defendants.

### ORDER

OWENS, District Judge.

## I. Introduction

The above plaintiffs are franchisees of defendant American Dairy Queen Corporation who transact business in the Middle District of Georgia. Plaintiffs each operate one or more Dairy Queen or Dairy Queen/Brazier restaurants in this district under similar, but not necessarily identical, written franchise agreements which they have entered into with defendants.

American Dairy Queen Corporation ("ADQ"), a Delaware corporation with its principal place of business in the State of Minnesota, owns all trademarks utilized in the Dairy Queen system and licenses and serves a system of 5,500 Dairy Queen stores. Defendant International Dairy Queen, Inc. ("IDQ"), also a Delaware corporation with its principal place of business in Minnesota, is the parent company of ADQ and is involved in activities relating to the sale and distribution of products to the Dairy Queen system.

Plaintiffs filed this lawsuit against IDQ/ADQ seeking injunctive and declaratory relief in addition to unspecified monetary damages. In Count I and Count II of the fourth amended complaint plaintiffs allege that defendants have violated § 2 of the Sherman Act, 15 U.S.C. § 2, by monopolizing or attempting to monopolize the market consisting of products sold to the franchisees. In Count III they allege defendants have violated § 1 of the Sherman Act by engaging in a tying arrangement. In Count IV they allege that defendants have breached that provision of the franchise agreement, under which each franchisee operates, which provides that the franchisee is free to purchase food products and supplies from any available source as long as the products meet defendants' reasonable standards and specifications. They allege that defendants have breached this provision by failing to establish and implement a reasonable procedure by which the franchisees may obtain new approved products. In Count V plaintiffs allege that defendants have violated an implied duty of good faith and fair dealing. In Count VI and Count VII they allege that defendants have breached those portions of the franchise agreement relating to advertising fees payable by more than 3,300 franchisees for the advertising and promotion of Dairy Queen products. They also allege that defendants have breached their fiduciary duty to the franchisees by charging the advertising fund an excessive management fee either not permitted by contract or not reasonably related to defendants' services, by selecting advertising agencies based on criteria not related to the goal of the best promotion and advertising at the lowest cost to the franchisees, and by usurping the advertising fund for their own benefit. In Count VIII plaintiffs allege that defendants have breached various obligations imposed upon them in the *Poole* settlement agreement including the provisions pertaining to manufacture and sale of cold drink cups and lids to the Dairy Queen system.[1]

Plaintiffs have moved for certification of a class action pursuant to Rule 23, Federal Rules of Civil Procedure. The undersigned has heard oral arguments on the issue of

---

1. A class action settlement agreement was entered March 13, 1974, in the case of *Poole v. International Dairy Queen and American Dairy Queen*, Civil Action No. 6719, filed in the United States District Court for the Middle District of Tennessee, Nashville Division.

class certification as well as on the parties' pending motions for summary judgment. Following oral argument, both parties submitted proposed findings of fact and conclusions of law at the direction of the court. After carefully considering the proposed findings and conclusions along with the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order with respect to plaintiffs' motion for class certification.

## II. Proposed class action

Plaintiffs have requested that the court certify the following two classes and two subclasses of Dairy Queen franchisees:

Class I, consisting of all members of the Dairy Queen Operators' Association.[2]

Class II, consisting of all other Dairy Queen and Dairy Queen/Brazier franchisees in the United States, except those franchisees who are located in the state of Texas and those who are Territorial Operators.

Subclass I, consisting of all members of Class I and Class II who are members of the permanent settlement class in the *Poole* settlement agreement and all persons claiming under them.

Subclass II, consisting of all members of Class I and Class II who made mandatory payments to the Dairy Queen advertising fund.

### A. General requirements of Rule 23

In exercising its discretion to determine whether class certification is appropriate under Rule 23, a trial court may not consider the merits of a plaintiff's claim. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). However, the court may consider as true the allegations of the complaint while considering the type of evidence a plaintiff must produce to prove his claims. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Plaintiffs bear the burden of proving that the prerequisites of Rule 23 have been satisfied. *Zeidman v. J. Ray*

*McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir.1981); *Newton v. Southern Wood Piedmont Co.*, 163 F.R.D. 625, 631 (S.D.Ga.1995). In order to meet the requirements of Rule 23, plaintiffs must satisfy all the requirements of Rule 23(a) and at least one of the three permissible categories identified in Rule 23(b). *Eisen*, 417 U.S. at 163, 94 S.Ct. at 2145–46.

### (1) Rule 23(a)

■ A class action is appropriate only if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The district court must determine "as soon as practicable" whether the class action is to be maintained, Fed.R.Civ.P. 23(c)(1), but "may alter its determination if it appears unsound after a fuller development of the facts." *Lumpkin v. E.I. DuPont De Nemours & Co.*, 161 F.R.D. 480, 481 (M.D.Ga. 1995).

■ *Numerosity:* The court finds that the numerosity requirement in the present case has been met. "Where joinder as an alternative to class action would be impracticable, the numerosity requirement of Rule 23(a) is satisfied." *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 521 (M.D.Ala.1992). The number of franchisees in each of the classes and subclasses is sufficiently large that joinder would not be practicable.

■ *Commonality:* Rule 23(a) also requires that there be questions of law or fact which are common to the class members. Commonality does not require the existence of identical questions of law or fact but only that the issue of liability is common. "The requirement is met if the questions linking the class members are substantially related to the resolution of the litigation even though

---

**2.** The Dairy Queen Operators' Association ("DQOA") is a not-for-profit Minnesota corporation which is an association of more than 1,300 Dairy Queen and Dairy Queen/Brazier franchi-

sees. Dairy Queen Operators' Cooperative ("DQOC") is a Minnesota corporation organized as a purchasing cooperative for the benefit of Dairy Queen franchisees and store owners.

the individuals are not identically situated." *Coleman*, 141 F.R.D. at 521. The Rule 23(a) requirement of commonality is not high, requiring only that resolution of the common questions affect all or a substantial number of the class members. *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir.), *cert. denied*, 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993), citing *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir.1986).

■ Defendants object to a finding of commonality in this case, claiming that plaintiff's claims are replete with individual questions. *See, e.g., Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 76 (D.N.J.1993) ("highly specific factual and legal determinations are not consistent with the commonality requirement of a class action"). However, the court finds that there are no factual and legal determinations to be made which are sufficiently specific to defeat the commonality requirement of the Rule. For example, the questions whether defendants engaged in a course of misconduct by preventing their franchisees from obtaining alternative sources of food products and supplies, or whether they exercised market power in order to exclude competition and force the franchisees to purchase products at supra-competitive prices, present common questions of law and fact. Moreover, the court does not find that the differences that may exist in the franchise agreements are sufficient to defeat the commonality requirement. Thus, "because the complaint alleges a scheme or common course of misconduct against a large class of [franchisees] allegedly defrauded over a period of time by similar misrepresentations, class certification is appropriate, regardless of the existence of some differences in class members' positions." *Longden v. Sunderman*, 123 F.R.D. 547, 553 (N.D.Tex.1988), cited in *Broussard v. Meineke Discount Muffler Shops, Inc.*, Bus. Franchise Guide (CCH) ¶ 10,729 at 27,038–39 (W.D.N.C.1993). Plaintiffs have satisfied the requirement of commonality by presenting common issues of law and fact relating to all the proposed class members.

■ *Typicality:* The typicality requirement means that the claims of the representatives have the "same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). The proper standard is that the class representative and the putative class members "possess the same interest and suffer the same injury." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). "The focus is on defendant's behavior, not that of plaintiff, and on whether the class can point to the same general, overall course of fraudulent conduct." *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 407 (D.N.J.1990). A plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory." *In re Domestic Air Transportation Antitrust Litigation*, 137 F.R.D. 677, 698 (N.D.Ga.1991), quoting *3 Newburg On Class Actions*, § 18.09 at 464. In addition, "the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class." *Id.*, quoting 7A Charles Alan Wright & Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1764 (1986) and *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379.

■ As is the case with commonality, the requirements of typicality are not high. *Shipes*, 987 F.2d at 316. In this case there is a sufficient nexus between the plaintiffs and the putative class members to include them in the same class. Furthermore, defendants' alleged violations would affect all the class members similarly. Thus, the court finds that the typicality requirement has been met.

■ *Adequacy of Representation:* The typicality inquiry is largely duplicative of the inquiry into whether the named plaintiffs will adequately represent and protect the interests of the proposed class members. *Coleman*, 141 F.R.D. at 522. Defendants

argue that the named plaintiffs' legal interests are contrary to those of the proposed class members because of their alignment with the Dairy Queen Operators' Association. However, the court does not find at this juncture that the named plaintiffs' involvement with the DQOC or the DQOA are sufficient to impact upon the adequacy of their representation. Having found that plaintiffs have satisfied the typicality requirement, the court also finds that they will protect the class members' interests despite possible variations in the positions of individual class members.

### (2) Rule 23(b)

 Class certification under Rule 23(b)(1)(A) or (B) is primarily for cases seeking injunctive and declaratory relief or payment from a limited fund. Plaintiffs' common interest in defendants' advertising fund is not in the court's view sufficient to certify a class based on this subsection. *In re Dennis Greenman Securities Litigation*, 829 F.2d 1539, 1545 (11th Cir.1987). In addition Rule, 23(b)(2) is not applicable to cases in which appropriate relief relates "exclusively or predominantly to money damages." *Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683, 690 (N.D.Ga.1983). In the present case plaintiffs are seeking both injunctive and declaratory relief as well as treble damages. Although plaintiffs have an interest in obtaining declaratory and injunctive relief, the predominant nature of this case is for money damages. Thus, the court finds that certification is not appropriate under either Rule 23(b)(1) or 23(b)(2) and that, as defendants suggest, the proper analysis of plaintiffs' motion is under Rule 23(b)(3).

Rule 23(b)(3) provides for the maintenance of a class action where:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

 Defendants argue that plaintiffs' antitrust claims do not present common questions of law and fact. With respect to the allegations in Count III, defendants point out that a plaintiff asserting a tying claim is required to prove that he purchased the tied product as a result of defendants' coercion. *See, e.g., Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 712 (11th Cir. 1984); *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307 (5th Cir.1976). Defendants argue that certification of a class under Rule 23(b)(3) would be improper because of the necessity for each plaintiff to produce individual evidence that he was coerced into buying the tied products from defendants. Thus, according to defendants individual questions would predominate over issues common to the class. However, plaintiffs argue that individualized showings of coercion are not required because coercion may be proved generally by a showing that defendants' approved source requirement is unreasonable and does not permit the franchisees any meaningful choice in the purchase of products.

In *Tic–X–Press, Inc. v. Omni Promotions Co. of Ga.*, 815 F.2d 1407, 1418 (11th Cir. 1987), the Court of Appeals stated:

> [T]he courts have never required direct evidence of coercive behavior to prove a tying violation. It is well established that coercion may be established by showing that the facts and circumstances surrounding the transaction as a practical matter forced the buyer into purchasing the tied product. [Citations omitted]

Thus, plaintiffs urge that the determination of unreasonableness should focus on defendants' product approval process itself rather than on conduct of any individual franchisee. Plaintiffs may be able to prove coercion by classwide evidence that defendants' approval process for products is futile and that it resulted in the exclusion of alternative suppliers from the market. *See Midwestern Waffles*, 734 F.2d at 712–13. Plaintiffs may also be able to show that defendants made it economically impractical for alternative suppliers to invest money in preparing to supply Dairy Queen franchisees, then to be required to engage in a two- or three-year approval process. Proof of the futility of the approval process may also focus on approval requests submitted by DQOC as well as on approval

requests submitted by individual class members, since numerous franchisees have designated DQOC as their agent for obtaining product approval. These and other issues common to the members of the proposed class will in the court's view predominate over questions specific only to individual class members.

■ Defendants also object to the standing of any franchisees who did not purchase their franchises directly from the defendants. Plaintiffs maintain that for purposes of asserting a tying claim, successors-in-interest to the original franchisees "purchased" the franchise (the tying product). Plaintiffs also urge that the subfranchisees derive standing from their use of the Dairy Queen affiliated trademarks. Also relevant to this question is plaintiffs' claim that franchisees are "locked in" to their existing franchisees because of the high cost of switching to another franchise. The court cannot find at this point that subfranchisees who use defendants' trademarks lack standing because they did not purchase the franchises directly from defendants, particularly when the "locked in" issue is taken into consideration. Thus, plaintiffs' tying claims are suitable for class certification. The court finds that the antitrust claims alleged in the fourth amended complaint present common questions of law and fact.

■ The Court also finds that the proposed *Poole* subclass is suitable for class certification because of the predominance of common questions of law and fact, i.e., defendants' violation of the settlement agreement with respect to the product approval process and their receiving payments or other items of value from manufacturers. Defendants' administration of the settlement agreement would have common effects on all members of the *Poole* subclass.

■ Defendants argue that class certification of the common law breach of contract claims are improper because there are more than 500 different types of franchisee agreements existing among the franchisees who are members of Class I and Class II. However, the lack of identical language in every franchise agreement does not preclude class certification with respect to the issues presented in Count IV (violation of the franchise agreement) and Count VI (misuse of the advertising fund) in view of the common issues presented in this lawsuit. "[T]he fact that not all contracts are identical is not sufficient to overcome the apparent commonality of issues that they present." *Kleiner v. First National Bank,* 97 F.R.D. 683, 694–95 (N.D.Ga.1983). No difference in the substantive meaning of the various contracts has yet been established, and plaintiffs are seeking to have the issues adjudicated under general contract law. Although most of the contracts provide that they are governed by Minnesota law, "[t]he application of various state laws would not be a bar [to class certification] where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform." *Id.* at 694. The question whether defendants have failed to establish and implement a reasonable procedure for approval of products and whether they have breached their contractual obligations to the franchisees regarding product approval present common questions of law and fact which are amenable to resolution by uniform common-law rules of contract interpretation. Thus, while some individual issues and differences may be asserted, the common questions of law and fact applicable to all the putative class members predominate over individual claims.

■ As for the Count VII breach of fiduciary claim, defendants claim that class certification would not be feasible because Georgia follows the rule of lex loci delicti, under which tort claims are governed by the law of the state in which the wrongful act occurred. *Wallace v. Harrison,* 166 Ga.App. 461, 304 S.E.2d 487, 489 (1983); *Federal Ins. Co. v. National Distrib. Co.,* 203 Ga.App. 763, 417 S.E.2d 671, 673 (1992). Plaintiffs assert that Minnesota law applies to the Count VII allegations because Minnesota is the situs of the advertising fund which defendants administer, Minnesota is where the tortfeasors are located, and Minnesota is the place where the conduct about which plaintiffs complain took place. Defendants counter that each contract was performed in the state where the individual franchisees are located. The court will certify the class pertaining to the issues

in Count VII, mindful of the fact that Rule 23 provides flexibility should it later be determined that any issue is not appropriate for maintenance of the class action. See Rule 23(c)(4).

■ Finally, the undersigned concludes that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Rule 23(b)(3) provides that matters pertinent to this finding include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. The court has considered all the above factors and concludes that they weigh in favor of class certification. No putative class member has indicated an interest in individually controlling the prosecution or defense of separate actions and the court is not aware of other litigation having been commenced. This case would not appear to present any unusual difficulties in management, nor does the court perceive any particular reasons that maintaining the class action in this forum would be undesirable. Thus, it is concluded that a class action would be superior to other available methods and would eliminate the risk of inconsistent adjudications with respect to individual members of the class.

### B. Arbitration provisions

■ Of the proposed members of Class I and Class II, approximately fifty-eight percent operate under franchise agreements containing arbitration provisions, while the franchise agreements of the remaining forty-two percent do not contain arbitration provisions. The Supreme Court held in *Mitsubishi Motors v. Soler Chrysler–Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), that antitrust claims in the international context are subject to arbitration. In *Kotam Electronics, Inc. v. JBL Consumer Products, Inc.,* 93 F.3d 724 (11th Cir.1996),

the Eleventh Circuit ruled that antitrust disputes in the domestic context are arbitrable as well. In so ruling, the Court determined that *Cobb v. Lewis,* 488 F.2d 41 (5th Cir. 1974), which held antitrust claims to be non-arbitrable, is no longer controlling precedent in this circuit in light of the Supreme Court's decision in *Mitsubishi. See also Gregory v. Electro–Mechanical Corp.,* 83 F.3d 382 (11th Cir.1996), citing the Supreme Court's general admonition in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

Defendants argue that class certification is not proper in the present case because of the arbitration clauses contained in the majority of the franchise agreements. Plaintiffs contend, however, that the forty-two percent of the approximately 1,300 members in the proposed Class I and the approximately 2,700 members in the proposed Class II whose franchise agreements do not contain arbitration clauses are sufficiently numerous for class certification without consideration of the arbitration provisions. Plaintiffs further argue that despite the ruling in *Kotam,* class certification is appropriate with respect to their antitrust claims. They reason, first, that unlike the arbitration clause in *Kotam,* the arbitration clauses in the Dairy Queen franchise agreements contain no express reference to arbitration of antitrust claims. They argue, in addition, that class certification of the antitrust issues is proper because of defendants' failure to move to compel arbitration and to stay these proceedings pending arbitration.

■ Section 3 of the Arbitration Act, 9 U.S.C. § 3, provides that if a suit is brought on the merits of a dispute covered by an arbitration agreement,

the court in which such suit is pending, upon being satisfied that the issue resolved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for

the stay is not in default in proceeding with such arbitration.

The purpose of the Act is to relieve court congestion and to provide a speedier and less costly method of dispute resolution than litigation. *Booth v. Hume Publishing, Inc.,* 902 F.2d 925, 932 (11th Cir.1990). Nevertheless, a party's right to arbitration may be waived. Waiver "occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. West of England Ship Owners Mutual Protection and Indemnity Association,* 62 F.3d 1356 (11th Cir.1995).

No party has moved the court to compel arbitration in this matter or to stay the proceedings pending arbitration of the relevant provisions of the franchise agreements. Thus, the questions of the appropriateness of class certification of the arbitrable claims or whether defendants have waived their right to arbitrate is not before the court at the present time. Realizing that these issues are likely to arise later, the court will certify an additional subclass consisting of those Dairy Queen franchisees whose franchise agreements contain arbitration clauses. Resolution of the issues which may come before the court on application of any party for a stay pending arbitration may result in redefinition of the classes of plaintiffs to exclude some or all of the members of this subclass. Should it become appropriate to exclude all or part of such subclass from these proceedings, the court determines that the remaining class members who are not subject to arbitration provisions constitute a sufficient number to satisfy the numerosity requirements of Rule 23(a).

### III. Summary

In conclusion, for the reasons set forth hereinabove, plaintiffs' motion for class certification will be GRANTED. The Court will certify the following classes pursuant to Fed. R.Civ.P. 23(b):

(a) Class I, consisting of all members of the Dairy Queen Operators' Association.

(b) Class II, consisting of all other Dairy Queen and Dairy Queen/Brazier franchisees in the United States, except those franchisees who are located in the state of Texas and those franchisees who are Territorial Operators.

(c) Subclass I, consisting of all members of Class I and Class II who are members of the permanent settlement class in the *Poole* settlement agreement and all persons claiming under them.

(d) Subclass II, consisting of all members of Class I and Class II who made mandatory payments to the Dairy Queen advertising fund.

(e) Subclass III, consisting of all members of Class I and Class II who operate under franchise agreements which contain arbitration provisions.