333 So.2d 491 (1976)
Joseph NIZZO, Appellant,
v.
AMOCO OIL COMPANY, Appellee.
No. 75-1010.
District Court of Appeal of Florida, Third District.
August 3, 1976.
Rehearing Denied September 8, 1976.
*492 Horton, Perse & Ginsberg, Dunn & Johnson, Miami, for appellant.
Carey, Dwyer, Austin, Cole & Selwood, Miami, for appellee.
Before PEARSON and NATHAN, JJ., and SACK, MARTIN, Associate Judge.
PER CURIAM.
This appeal is by Joseph Nizzo, who was the defendant and counterclaimant in the trial court. He appeals an order dismissing with prejudice his counterclaim against the plaintiff, Amoco Oil Company. The controlling question presented is whether the counterclaim, which was for alleged tortious interference with Nizzo's business by Amoco, is precluded by the fact that the lease between the parties contained the following clause concerning the assignment of the lease:
* * * * * *
"8. Lessee will not assign, mortgage or encumber this lease, or sublet the said premises, buildings, equipment, machinery and appliances or any part thereof, and will not allow any lien or encumbrance to be placed upon the leasehold interest hereby created or any part thereof, without first obtaining the written consent of lessor."
* * * * * *
Nizzo was an Amoco dealer. He got behind in his accounts with Amoco and the parties agreed to terminate their business relationship. Nizzo owed at that time $5,945.50 for oils, tires, batteries and other items. When he did not pay, Amoco filed suit for the money. Nizzo filed a counterclaim, the material portions of which are as follows:
* * * * * *
"5. That on or about the 26th day of December, 1972, the Defendant/Counter Plaintiff, JOSEPH NIZZO, obtained a purchaser to wit a certain: Ralph Gonzalez, who entered into a contract with the Defendant/Counter Plaintiff, JOSEPH NIZZO, to purchase said business for the sum of Five Thousand and No/100 ($5,000.00) Dollars, which sale was to include the assets thereof, together with the Counter Claimant's good will.
"6. The said Plaintiff/Counter Defendant, AMOCO OIL COMPANY, through its agent, servant and employee, advised your Counter Claimant, JOSEPH NIZZO, that they would not approve said prospective purchaser after previously advising your Counterclaimant that said purchaser appeared to be well qualified and would be an asset to operating an Amoco Service Station.
"7. The Counterclaimant later discovered that while the said corporation, AMOCO OIL COMPANY, refused to approve said prospective purchaser and required your Counterclaimant, JOSEPH NIZZO, to return the deposit of Five Hundred and No/100 ($500.00) Dollars, said AMOCO OIL COMPANY, induced said prospective purchaser to purchase a different service station at a different *493 location. All of this was unknown to the Counterclaimant.
"8. Thereafter, on or about the 11th day of May, 1973, the Counterclaimant obtained another buyer, to wit: Gilbert Louis, who was willing and able to purchase said station for the amount of Five Thousand and No/100 ($5,000.00) Dollars, and pursuant to said agreement, put up a Five Hundred and No/100 ($500.00) Dollars deposit.
"9. The Plaintiff/Counter Defendant, AMOCO OIL COMPANY, was advised of this second prospective purchaser through its agent, servant and employee, and when said agent, servant, and employee discovered that the second prospective purchaser was a member of the black race, the agent, servant, and employee of the Plaintiff/Counter Defendant, stated that they would not allow and permit a member of the black race to operate that service station in that area and that to do so was contrary to the Plaintiff's business policy.
"10. All of the acts of the aforementioned Plaintiff/Counter Defendant, through its agent, servant and employee, caused the Defendant/Counter Plaintiff to lose both of these sales."
Upon motion to dismiss the counterclaim, Amoco urged in the trial court that it affirmatively appears from the lease, which was an exhibit to the complaint, and the allegations of the counterclaim that the counterclaim did not state an action upon which relief could be granted because the lease showed that there was no restriction upon Amoco's right to disapprove of any assignee. It is urged that under the law, a lessor's refusal of consent, even though arbitrary and unreasonable, is not legally actionable where the covenant prohibiting assignment is without qualifications. See 49 Am.Jur.2d Landlord & Tenant § 423 and cases cited therein. In addition, appellee urges that the Florida case of Financial Business Services, Inc. v. Schmitt, Fla.App. 1973, 272 So.2d 536, is persuasive for appellee's position that the law in Florida is the same.
Appellant, on the other hand, maintains that the law in Florida is, or should be, that the unreasonable withholding of consent to the assignment of a lease by the landlord constitutes actionable interference with the lessee. Appellant relies upon Tollius v. Dutch Inns of America, Inc., Fla.App. 1970, 244 So.2d 467. In addition, it is urged that Amoco's refusal to approve the assignment to one of the proposed assignees was based upon the fact that it was against the policy of Amoco to permit a member of the black race to operate a service station in the area where Nizzo's business was located. It is, thereupon, argued that such refusal was illegal because it deprived the proposed assignee of constitutional rights and that, therefore, it cannot be justified by a contract which gives Amoco the right to disapprove of assignees.
We hold that neither of these questions is determinative in the present case. A reading of the counterclaims show that they are based upon allegations other than the simple refusal to approve of the assignee. In paragraph 7, above quoted, the counterclaim alleges effective interference with a contract of sale by taking Nizzo's prospective purchaser and inducing him to purchase a different service station. A reading of the entire counterclaim shows that it recites a course of conduct which would constitute a tortious interference with Nizzo's business if the allegations were true.
Paragraph 8 alleges a breach of law in that it is alleged that Amoco refused to consider a qualified purchaser solely because of his race. The law is clear that the contract may not give validity to illegal acts. See Schaal v. Race, Fla.App. 1961, 135 So.2d 252, and cases cited therein. We hasten to point out that we are dealing in the instant case with a pleading and not with established facts. We determine simply that the pleading is not subject to dismissal because of the provision in the lease which attempts to give the counter-defendant the right to reject a prospective customer for any reason sufficient to itself.
*494 The right of a lessor to disapprove of prospective assignees of a lease does not render the lessor immune from an action for tortious interference with the business of the lessee where it can be shown that the actions of the lessor amounted to an intentional interference with an advantageous business relationship. See Dade Enterprises v. Wometco Theatres, 119 Fla. 70, 160 So. 209 (1935); and John B. Reid & Associates, Inc. v. Jimenez, Fla.App. 1966, 181 So.2d 575.
The order dismissing the counterclaims with prejudice is reversed and the cause is remanded with directions to deny the motion to dismiss.
Reversed and remanded with directions.