**1550 BRICKELL ASSOCIATES,**
Plaintiff,

v.

**Q.B.E. INSURANCE COMPANY,**
Defendant.

Case No. 07–22283–CIV.

United States District Court,
S.D. Florida.

Feb. 3, 2009.

Alvin Bruce Davis, Tania Cruz, Squire Sanders & Dempsey LLP, Miami, FL, for Plaintiff.

Constantine Georgalis Nickas, William Frederick Fink, Amy Millan Demartino, Wicker, Smith, O'Hara, McCoy & Ford, P.A., West Palm Beach, FL, Melissa M. Sims, William S. Berk, Sorraya Solages, Berk, Merchant & Sims, PLC, Coral Gables, FL, for Defendant.

### ORDER

BARRY L. GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court on defendant QBE Insurance's Motion for Reconsideration [DE 141]. The Court has received the Response in Opposition [DE 151] and the Reply [DE 152]. After due consideration, and for the reasons set forth below, QBE Insurance's Motion for Reconsideration is DENIED.

█ QBE Insurance has moved for the Court to reconsider its October 20, 2008, 253 F.R.D. 697 Order. A Court will reconsider an order when the movant shows that (1) the law has changed since the order was issued, (2) new evidence has become available, or (3) the Court's decision was clearly erroneous or manifest injustice would result from letting the order stand.[1] QBE argues that new evidence has become available, that the Court's decision was clearly erroneous, and that manifest injustice would result from letting the order stand.

*1. New Evidence*

█ All the new evidence that QBE presents to the Court could have been presented before the Court issued its Order. First, QBE submits the September 26, 2008 deposition of its chief claims inspector, Andrew Bertucci. In his deposition, Mr. Bertucci elaborates on his almost immediate conclusion that litigation was possible based on the size of 1550 Brickell's damage estimate. Mr. Bertucci also testifies on the role that Ms. Sims played during the appraisal process. This is not new evidence; QBE attended Mr. Bertucci's deposition and was well aware of his testimony. Second, QBE submits the fact that on August 4, 2006, 1550 Brickell sent it a draft complaint, which, QBE argues, clearly demonstrates that litigation was anticipated from that point forward. This, also, is not new evidence. QBE responded to the draft complaint and knew of the draft complaint.

---

1. *Burger King Corp. v. Ashland Equities, Inc.,* 181 F.Supp.2d 1366, 1369 (S.D.Fla.2002).

If the Court were to now consider evidence previously available to QBE, the Court would be giving QBE the proverbial second bite at the apple. QBE made a tactical decision to argue exclusively that it immediately anticipated litigation. It chose not to dilute this argument by presenting evidence that supported a conclusion that QBE began to anticipate litigation at a later date. A motion for reconsideration is not a vehicle to remake a tactical choice. Accordingly, the Court will not consider the new evidence and makes no statement as to what it may have ruled had QBE presented all available evidence.

### 2. Clearly Erroneous

QBE also argues that the Court clearly erred when it held that QBE could not claim work product immunity or attorney client privilege for documents created before 1550 Brickell filed its complaint.

### Work Product

■ This court has joined other courts in this District[2] and adopted the framework established in *Harper v. Auto-Owners Ins. Co.*,[3] to analyze work-product claims in the insurance context. Because work-product immunity applies to documents primarily created to aid in possible litigation,[4] and insurance companies investigate claims in the ordinary course of their business, finding the point in time when work-product immunity attaches is difficult. Thus, to aid in the inquiry, the *Harper* court adopted the rebuttable presumptions that documents prepared prior to a claim's denial are not work-product, and, conversely, those created after are.[5]

■ QBE argues that the *Harper* framework is too clumsy a tool for broad use, because where arbitration is required, it pushes insurance companies to prematurely deny claims. The Court disagrees; the *Harper* framework merely requires that an insurance company present evidence of the point at which it began to prepare documents in anticipation of litigation. In this instance, the *Harper* framework still applies because the mere undertaking of arbitration does not, by itself, demonstrate that documents are created in anticipated litigation.

■ QBE has not denied 1550 Brickell's claim. Thus, under the *Harper* presumptions, none of the documents that QBE prepared before 1550 Brickell filed suit are work product. To rebut the presumption, QBE submitted an affidavit of its senior claims consultant, which stated that he thought litigation was likely based on the extent of the damages he saw and the amount of damages 1550 Brickell was seeking. The Court held that this was not enough to rebut the *Harper* presumptions. To argue that it is altogether misses the point of the *Harper* framework, which rejects the idea that demonstrating that an insurance company began an investigation with the understanding that litigation is possible establishes work-product immunity.

### Attorney Client Privilege

In its Order, the Court found that QBE could not claim attorney client privilege for documents created before 1550 Brickell filed suit because it had failed to show that Ms. Sims had performed acts in her professional capacity as an attorney and in anticipation of litigation prior to this date. The standard the Court used was adopted

---

**2.** *See e.g., Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 701 (S.D.Fla.2007); *St. Joe Co. v. Liberty Mutual Ins. Co.,* 2006 WL 3391208 at *7 (Nov. 22, 2006).

**3.** 138 F.R.D. 655 (S.D.Ind.1991).

**4.** *Id.* at 661.

**5.** *Id.* at 663.

from the *Milinazzo* court's reading of two Florida state court decisions—*Bankers Insurance Company v. Florida Dept. of Ins. and Treasurer*[6] and *Southern Bell Tel. & Tel. Co. v. Deason.*[7]

QBE takes issue with this Court's reliance on *Bankers,* which is, as QBE correctly characterizes it, a single page decision that cites no case law in support. In *Bankers,* the Florida Court of Appeals affirmed a holding that communications between an insurance company and an attorney were not privileged because the attorney functioned as a mere "conduit" of the insurance company with respect to the investigation the company had undertaken.[8] QBE argues that the Court has deformed this holding in an effort to apply it universally. In QBE's words:

> "[T]here is no indication whatsoever that the case involves an investigation of a claim to determine coverage under the policy of insurance. Unfortunately, the proposition of *Bankers* has been removed from its round peg and squeezed into a square one in an effort to apply the proposition to all cases in which insurers are apparently named as parties."[9]

This Court's reading of the proposition of *Bankers* is not nearly as radical as QBE argues. The *Bankers* decision merely stands for the proposition that communications involving those steps that an insurance company undertakes in its ordinary investigation of a claim do not develop privileged status merely because they involve an attorney. This is a natural extension of rulings by the Florida Supreme Court, which has held that claims of attorney-client privilege made by corporations are subject to more scrutiny and that the heightened standard is necessary to "prevent[ ] corporate attorneys from being used as shields to thwart discovery."[10] Thus, the *Milinazzo* court's holding that in the insurance context, "attorney-client privilege attaches only when an attorney performs acts for an insurer in his professional capacity and in anticipation of litigation" is fully supported and not so giant a leap as QBE Insurance imagines.

The Court found that Ms. Sims was initially retained as a mere conduit based on Sandy Siegel's affidavit, which described Ms. Sims' initial role thusly: "Ms. Sims was retained to assist me in developing the investigation, securing Examinations Under Oath and, you know, propounding documents requests and things of that nature...."[11] In short, these are the activities of someone whom would be hired even if litigation were not remotely contemplated. QBE had ample opportunity to submit evidence that Ms. Sims' role changed. QBE did not convincingly argue that her position changed before 1550 Brickell filed suit.

### 3. Manifestly Unjust

■ Lastly, QBE argues that the Court should reconsider its order to prevent the "manifest injustice that has occurred by 1550 [Brickell's] receipt of privileged documents."[12] To rectify the injustice, QBE Insurance asks the Court to require 1550 Brickell to return the privileged documents and disqualify 1550 Brickell's counsel.

QBE Insurance argues that Ms. Sims response to 1550 Brickell's August 4, 2006

---

**6.** 755 So.2d 729 (Fla.Dist.Ct.App.2000).

**7.** 632 So.2d 1377 (Fla.1994).

**8.** *Bankers Insurance Co.,* 755 So.2d at 729.

**9.** [DE 141 p. 7 n. 5]

**10.** *Southern Bell Tel. & Tel. Co.,* 632 So.2d at 1383.

**11.** This quote was cited in 1550 Brickell's Second Motion to Compel. [DE 114 p. 4 n. 5]

**12.** [DE 152 p. 2]

draft complaint demonstrated that from that point forward she was acting in her capacity as an attorney. The Court agrees. And while it is inappropriate to consider this evidence as 'new' or in the analysis of whether the Court's Order was clearly erroneous, the evidence is a factor in determining whether the Court's Order has resulted in manifest injustice.

Despite the possibility that QBE turned over privileged documents, the result of the Order is not manifestly unjust because it arose from QBE's actions. As has been noted, QBE Insurance knew about 1550 Brickell's draft complaint and failed to present this evidence to the Court. Additionally, QBE could have properly filed a motion to stay before it produced the documents, or, delivered the documents to the Court within the deadline and filed a motion to reconsider. Accordingly, QBE's Motion for Reconsideration is DENIED.