**The PORTO VENEZIA CONDO-MINIUM ASSOCIATION, INC., Plaintiff,**

v.

**WB FORT LAUDERDALE, LLC, Defendant.**

**WB Fort Lauderdale, LLC, Third–Party Plaintiff,**

v.

**All State Engineering & Testing Consulting, Inc., et al., Third–Party Defendants.**

**Case No. 11–60665–CIV.**

United States District Court, S.D. Florida.

Feb. 27, 2013.

John Marcus Siracusa, Melissa Devlin Lazarchick, Janssen & Siracusa, P.A., West Palm Beach, FL, for Plaintiff.

Gary A. Woodfield, Haile, Shaw & Pfaffenberger, P.A., North Palm Beach, FL, for Defendant and Third–Party Plaintiff.

### ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Reconsideration to Alter or Amend Summary Judgment Orders and/or for Relief from Final Judgment [DE 501]. The Court has carefully considered the motion, Defendant's Response in Opposition [DE 522], and Plaintiff's Reply [DE 528], and is otherwise fully advised in the premises.

#### I. STANDARD OF REVIEW

 Plaintiff The Porto Venezia Condominium Association, Inc. ("Porto") moves under Federal Rule of Civil Procedure 59(e) and 60 for reconsideration of summary judgment granted in favor of Defendant WB Fort Lauderdale, LLC

("WB"). A rule 59(e) motion for reconsideration of an order may only be granted on the grounds of newly discovered evidence or manifest errors of law or fact. *See Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir.2007). The function of a Rule 59(e) motion "is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory," or "to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised" earlier. *Mincey v. Head,* 206 F.3d 1106, 1137 n. 69 (11th Cir.2000). It is an "extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.,* 181 F.Supp.2d 1366, 1370 (S.D.Fla.2002) (citing *Mannings v. School Board of Hillsborough County,* 149 F.R.D. 235, 235 (M.D.Fla.1993)). For a court to reconsider its prior judgment the moving party must present facts or law of a "strongly convincing nature" that would induce a court to reverse its prior decision. *Id.* (citing *Sussman v. Salem Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla.1994)).

## II. BACKGROUND

As this case's lengthy docket indicates, litigation has been cumbersome in this matter. Because Plaintiff has alleged that the Court has overlooked the law applicable to this case, the Court sees good cause to take care to set forth the history of this case.

On March 28, 2011, Porto filed a complaint against WB using this Court's diversity jurisdiction. The complaint contained three counts. The first was for breach of statutory implied warranties pursuant to Florida Statute § 718.203 because the Porto property was allegedly not fit, merchantable, and suitable for its intended purposes. The basis for this claim was that WB had failed to construct the property pursuant to the building code and plans and had used poor design, engineering and construction. Porto included a list of claimed defects, including issues with the roof, building exterior, floor tiles, mold, seawall, and the electrical, mechanical, and plumbing systems. Count II piggy-backed off of Count I, claiming that the cited defects violated the building code and gave Porto a cause of action under Florida Statute § 553.84. Count III was also based on the same defects, but was grounded in a negligence theory. Porto claimed that WB breached its duty of care in the design and construction of the Porto property.

On November 17, 2011, WB filed a third-party complaint against the contractors who had worked on Porto's property. WB was seeking both contribution and indemnification. WB wanted to be able to recover from the contractors if it was held liable to Porto.

The same day, Porto asked for permission to amend its complaint. The Court granted this request, resulting in Porto filing the operative complaint. [DE 22]. The only difference between the original complaint and the amended complaint was the inclusion of additional defects at Porto's property. The additions included items like defective elevators, boat slips, and soil loss. The three counts remained the same.

Beginning in January 2012, the third-party defendants began filing a bevy of motions to dismiss WB's third-party complaint for failure to state a claim. After the motions had been fully briefed, the Court granted the motions to dismiss in late May 2012. It found that there was no statutory claim for contribution prior to judgment. It then found that there was no common law right to contribution under the facts of this case. As for common law indemnification, the Court concluded that WB's third-party complaint failed to allege

a sufficient special relationship supporting indemnity to survive a motion to dismiss. The Court therefore dismissed the third-party complaint without prejudice.

WB filed an amended third-party complaint on June 8, 2012. The amended third-party complaint only sought indemnification. Shortly thereafter, another round of motions to dismiss the third-party complaint was filed. In August 2012, the Court granted these motions as well. Though WB had successfully alleged that it had a special relationship with the third-party defendants for indemnification purposes, it had alleged that it was at fault, which was fatal to its indemnification claim. Refusing to overlook this flaw, the Court again dismissed WB's third-party complaint. A few days later, WB filed a second amended third-party complaint, which was not challenged by motions to dismiss.

After the fray between WB and the third-party defendants abated, Plaintiff filed a motion for partial summary judgment. It asked the Court to rule as a matter of law that WB was a "developer" under Florida Statute § 718.203. In ruling on the motion, the Court set forth the following facts as undisputed:

Porto is a condominium association in Fort Lauderdale, Florida. WB is a wholly owned subsidiary of ING Direct, FSB. ING Direct was the lender for the initial developer, High Point Group. High Point defaulted on the loan, so ING Direct created WB on November 13, 2008. WB took title via a deed in lieu of foreclosure shortly thereafter.

WB advertised the Porto units and sold them. WB designated itself as the developer in Porto's Amended and Restated Declaration of Condominium. The purchase agreements identified WB as the developer. On December 17, 2009, WB turned over control of the Board of Directors to the owners. [DE 497 at 2–3].

The Court examined whether WB was a "developer" according to Florida Statute § 718.203. That statute defines "developer" as a "person who creates a condominium or offers condominium parcels for sale or lease in the ordinary course of business . . . ." § 718.103(16), Fla. Stat. Because WB had been created for the sole purpose of selling the Porto units, the Court concluded that WB was a "developer" that offered condominium parcels for sale in the ordinary course of its business.

Plaintiff wanted the Court to conclude that as a developer, WB had to honor warranties created by § 718.203. That section deems developers "to have granted to the purchaser of each unit an implied warranty of fitness and merchantability for the purposes or uses intended" on the building; roof, mechanical, electrical and plumbing elements; personal property transferred or appurtenant to the unit; and other improvements. *Id.* § 718.203.

The Court did not require WB to honor these statutorily created warranties, however. The Court concluded that WB was not a builder-developer, but rather a lender who had stepped into the title of a developer after construction had been completed. The Court quoted *Chotka v. Fidelco Growth Investors*, 383 So.2d 1169, 1170 (Fla. 2d DCA 1980) for the proposition that lenders who foreclose a loan on a property after most of the construction is completed would only be liable as a "developer" "to the extent that they may be held liable for performance of express representations made to the buyer, for patent construction defects in the entire condominium project, and for breach of any applicable warranties due to defects in the portions of the project completed by [the construction lenders]." A later case, *Port*

*Sewall Harbor & Tennis Club Owners Association, Inc. v. First Fed. Savings & Loan Association,* 463 So.2d 530, 531–32 (Fla. 4th DCA 1985), cited *Chotka* with approval. The *Port Sewall* court concluded that lenders who take possession were not liable "for every delict or breach of contract committed by the original developer" because if so, "no lender could buy in the property at public sale without potential catastrophic exposure to liability." *Id.* On the basis of *Chotka* and *Port Sewall,* the Court concluded that lenders-turned-developers were only liable for work that they completed, for patent defects of which they were aware, and for breach of any express warranties such developers made.

Shortly after ruling on Plaintiff's motion for partial summary judgment, the Court issued its opinion on WB's motion for summary judgment. [DE 497]. Porto did not file a statement of material facts, so the Court took WB's facts as admitted. The only meaningful additional fact asserted was that WB had not conducted any construction at issue in this case.

Because it was undisputed that WB had not constructed any relevant part of Porto, the Court applied *Chotka* and *Port Sewall* to hold that WB was not liable as a lender-developer. Having engaged in no construction itself, it could not be liable for construction defects. The Court also found that WB could not be liable under the Florida Building Code because it had not engaged in any construction. As for negligence, the Court found that because all construction had been completed, WB did not breach any duty, even duties that

could arise if a lender took active part in developing a construction project.

The Court noted in a footnote that Porto had argued that even under *Chotka,* a developer is liable for patent defects on the premises.[1] The Court chose not to consider Porto's argument about WB's liability for patent defects because the Court interpreted Porto's claims throughout the litigation as claims concerning improper construction, not failure to disclose patent defects. Finding that a party cannot raise new claims in response to summary judgment, *see Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir.2004), the Court declined to consider the patent defect claim.

## III. RECONSIDERATION

■ Having considered the arguments advanced by Porto and WB, the Court now agrees that it misapplied *Chotka* and *Port Sewall* to § 718.203 warranties. Neither *Chotka* nor *Port Sewall* concerned statutorily implied warranties; indeed, both cases noted that they were *not* brought under that section. *See Chotka,* 383 So.2d at 1169; *Port Sewall,* 463 So.2d at 531. Because the Florida Legislature crafted a broad definition of "developer" that captures both builder-developers and lender-developers, the Court should not have cut away statutory obligations that ride along with entities meeting that definition. Furthermore, the Court now observes that the prior order is internally inconsistent because it treats WB as a separate entity from the "lender" when deciding that WB was a "developer," but conflates WB and ING as a "lender" for purposes of applying *Chotka* and *Port Sewall's* exception for

---

1. This doctrine from *Chotka* is curious, because ordinarily a seller of property only has a duty to make known *latent* defects, not *patent* defects. *See Johnson v. Davis,* 480 So.2d 625, 629 (Fla.1985) ("[W]here the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer.").

lender-developers. [DE 497]. As a developer, WB is subject to the warranties the Florida Legislature placed upon it.

In reaching this conclusion, the Court is not holding that § 718.203 is a necessarily good policy. At least one commentator believes that placing lenders or their subsidiaries at risk for construction defects makes for a "Hobson's Choice" for lenders. *See* Martin A. Schwartz, *The Successor Developer Conundrum in Distressed Condominium Projects,* Fla. Bar. J. at 64, 65 (July/Aug. 2009). "If, in acquiring the collateral for its loan, the lender inherits liability for the borrower's defective workmanship, does it have to choose between relinquishing control of its collateral or assuming liability for existing defects? Such a result makes a foreclosing lender or bulk buyer, in essence, a guarantor of construction by others." *Id.* Indeed, it is peculiar to make a lender a guarantor of the construction of others, because Florida law elsewhere is clear that such liability is inappropriate. *Armetta v. Clevetrust Realty Investors,* 359 So.2d 540, 543 (Fla. 4th DCA 1978) ("A lender owes no duty to others to supervise the construction and development of projects which it has financed."). Nevertheless, it is not this Court's place to quibble with the Florida Legislature's clear language.

■■■ As an alternative basis for allowing this action to go forward to trial, the Court also reconsiders its refusal to consider the patent defect argument Porto advanced. Porto has shown that WB was aware of defects on the property, such as issues with the seawall, prior to selling the units. *See* [DE 454 at 9–10 (citing record evidence) ]. Because WB was a developer, it was liable for patent defects, even supposing it was not liable for the full range of statutory warranties. *Chotka,* 383 So.2d at 1170. Whether defects were latent or patent is a question of fact for the jury.

*Kala Investments, Inc. v. Sklar,* 538 So.2d 909, 916 (Fla. 3d DCA 1989). Therefore, the question of developer warranties should have gone to the jury.

Because the Court is granting reconsideration and allowing this case to proceed to trial on account of WB's status as a "developer," the Court now pauses to address WB's secondary argument in its response to the motion to reconsideration. WB argued that even if this Court did reconsider its prior ruling, summary judgment should still be granted to WB because WB was not, in fact, a developer. The basis for WB's argument is *First Federal Savings and Loan Association of Seminole County v. Department of Business Regulation,* 472 So.2d 494 (Fla. 5th DCA 1985).

In that case, the Fifth District Court of Appeals found that a bank that had foreclosed on several individual condo units was not liable for a civil penalty imposed by the Florida Department of Business Regulation for not making a certain condominium filing. It was not liable because the lender was not a "developer." Though the bank sold the units, the court was not persuaded that this fact meant that the bank was "offering" condo units for sale in the ordinary course of business. *Id.* at 495–96. Because "offering" was not defined in 718.103, the court used a Department of Business Regulation administrative rule for interpretation. That rule, 7D–17.01(1), said that an "offer" only occurred if the proposed sale would generate a gain or a profit. *Id.* at 496. The court then concluded that there was no offer under this definition. *Id.*

The portion of *First Federal* requiring offers for sale to be done for profit is inapposite. The meaning of "offer" was important in *First Federal* because civil liabilities hinged on whether the bank's sale of condo units triggered reporting re-

quirements under different sections of Florida Statute § 718. The Florida Department of Business Regulation's definition of "offer" was to provide context for when reporting requirements triggered, not when statutory warranties applied. Indeed, the regulations in force today explicitly state which sections of § 718 the definition applies to, and § 718.203 is not one of those sections. *See* Fla. Admin. Code Ann. r. 61B–15.0011 ("For purposes of these rules and Sections 718.502, 718.503, and 718.504, F.S., the following definitions shall apply ...."); *id.* r. 61B–79.001 ("In determining whether a developer has offered a contract for sale or lease pursuant to Section 719.502(2)...."). Therefore, the Court does not conclude that the word "offering for sale" in Florida Statute § 718.203 means "offering for sale at a profit."

Second, WB argues that it did not sell condo units in the ordinary course of its business, much like the lender in *First Federal*. The Court has already considered this argument and rejected it, because WB was a special, separate entity apart from the lender whose only business was to sell condo units. [DE 497 at 4]. The Court stands by that prior ruling.

Having reconsidered the Order granting summary judgment to Defendant WB, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Reconsideration to Alter or Amend Summary Judgment Orders and/or for Relief from Final Judgment [DE 501] is **GRANTED;**

2. The Order granting summary judgment to WB [DE 499] is **VACATED.**

3. WB's Motion for Summary Judgment [DE 388] is **GRANTED IN PART** as to Counts II and III[2];

4. Because the Court's entry of judgment for WB mooted several ripe motions, on or before March 6, 2013, any party, including third-party defendants, desiring the Court to consider a motion shall file a notice on the docket indicating the docket number of the motion that it wants the Court to rule on. Failure to file this notice by that date will result in the Court deeming the motion withdrawn. No further briefing shall be submitted without the Court's prior written order.

5. At the time the Court entered summary judgment for WB and closed the case, forty-seven days remained until trial. The Court will reset trial in this case for a period approximately one month longer than the time that originally remained. Calendar call is hereby rescheduled to Friday, May 24, 2013 at 10:00 a.m., with trial scheduled for the two-week trial period commencing May 27, 2013.

---

**2.** Porto did not ask the Court to reconsider its grant of summary judgment to WB on the Florida Building Code claim or the negligence claim. *See* [DE 501 at 3 n. 1 ("Porto Venezia also brought claims for violation of Section 553.84 and negligence, which are not pertinent to the instant Motion for Reconsideration.")]. The Court will not *sua sponte* revisit those portions of its prior order.