Arnold ROSEN, Class Representative; Arthur Garter; Jerome Myer; Susan Sadetsky; Millie Schwartz; Shirley Trout; Carola Zanelli; et al., Plaintiffs,

v.

J.M. AUTO INC., a Florida Corporation, d.b.a. J.M. Lexus; Southeast Toyota Distributors L.L.C., a Delaware Corporation; J.M. Family Enterprises Inc., a Florida Corporation; Lexus U.S.A.; Toyota Motor Sales U.S.A. Inc., a California Corporation, Defendants.

No. 07–61234–CIV.

United States District Court,
S.D. Florida.

Jan. 26, 2009.

Order Denying Defendants' Motion for
Reconsideration May 15, 2009.

Order Granting Plaintiffs' Motion for
Reconsideration May 26, 2009.

Jonathan Gdanski, Scott P. Schlesinger, Sheldon J. Schlesinger PA, Fort Lauderdale, FL, A. Robert Zeff, Zeff & Zeff PC, Detroit, MI, for Plaintiffs.

Donald Arthur Blackwell, John Carl Seipp, Jr., Seipp Flick & Kissane, Christopher Stephen Carver, Akerman Senterfitt, Miami, FL, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

WILLIAM P. DIMITROULEAS, District Judge.

THIS IS CAUSE is before the Court upon the Plaintiff's Motion for Class Certification [DE 48] filed on September 24, 2008. The Court has carefully considered the Motion, the Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification [DE 53] filed on October 13, 2008, the Plaintiff's Reply to Defendants' Memorandum and Affidavits in Opposition to Plaintiffs' Motion for Class Certification [DE 54] filed on October 23, 2008, and the parties' affidavits and exhibits, and is otherwise fully advised in the premises.

### I. BACKGROUND

On or about July 18, 2007, the Plaintiffs in this action filed suit in the circuit court for the Seventeenth Judicial Circuit in and for Broward County. The Defendants removed the case to federal court on August 29, 2007. While the Complaint contains twenty (20) Counts, the claims break down into the following categories, each asserted against the various Defendants in this case: (1) Breach of Express Warranty, (2) Breach of Implied Warranty, (3) Claim for Equitable and Injunctive Relief for failure to inform its customers of the potential defects in their vehicles and (4) Violations of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The putative class in this case consists of "[e]very owner or lessee of a 2007 Lexus ES 350 who purchased or leased the vehicle in Florida." [DE 48].

Pursuant to Federal Motor Vehicle Safety Standard ("FMVSS") 208,[1] all vehicles must have a "smart airbag," which, among other things, activates the passenger side airbag when it detects an adult occupant in the front passenger's seat. In line with FMVSS 208, all ES 350s are equipped with an airbag occupant classification system (OCS) beneath the front passenger seat. However, Plaintiffs allege that the ES 350 is defective because the ES 350's OCS erroneously concludes that either no one is present in the front seat, or that the person weighs less than the person's actual weight. These defects de-activate the airbag system so that, in the event of a collision, the airbag does not deploy. The Plaintiffs allege that this problem is caused by the inadequate design or manufacture of the ES 350's passenger airbag system and renders the ES 350 defective and unreasonably dangerous.

Plaintiffs allege that members of the proposed class (namely Arnold Rosen, the proposed class representative) complained to the Defendants and had his vehicle inspected by Defendants' engineers. Plaintiffs have lodged official complaints with the National Highway Traffic Safety Administration ("NHTSA"). The Defendants, however, have still failed to remedy the defect and repair or replace the Plaintiffs' vehicles.

Plaintiffs allege that the Defendants continued to sell and lease the defective ES 350s despite the fact that they are fully aware of the nature and scope of these dangerous defects. Plaintiffs allege that the Defendants did not apprise any prospective purchaser or lessee of the defect, but continued to market and warrant the vehicle as safe and affirmatively described the air bag system in terms inconsistent with the existence of the defect. Plaintiffs also claim that the Defendants have failed to remedy the alleged defect.

### II. DISCUSSION

Parties seeking class action certification must satisfy the four requirements of Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality and adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Parties moving for class certification bear the burden of establishing each element of Rule 23(a). *London v. Wal-Mart Stores*, 340 F.3d

---

1. The FMVSS are safety standards promulgated by the Department of Transportation under the authority of the National Traffic Motor Vehicle Safety Act ("Safety Act"). *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 864–65, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). The stated objective of the Safety Act is "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101.

1246, 1253 (11th Cir.2003). If the party seeking class certification fails to demonstrate any single requirement, then the case may not continue as a class action. *Jones v. Roy,* 202 F.R.D. 658, 662 (M.D.Ala.2001). Specifically, the four requirements of Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b). *Amchem Prods.,* 521 U.S. at 614, 117 S.Ct. 2231. Here, Plaintiff puts forth that class certification is appropriate pursuant to either Rule 23(b)(2) or (b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole". Fed.R.Civ.P. 23(b)(2). Class certification under Rule 23(b)(3) is appropriate when (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individuals members," and when (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir.1992). Although a district court is not to determine the merits of a case at the certification stage, sometimes " 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.' " *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1309 (11th Cir.2008) (quoting *General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct.

2364, 72 L.Ed.2d 740 (1982)). A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger,* 733 F.2d 1551, 1555 (11th Cir.1984). However, doubts are to be resolved in favor of certifying the class. *Singer v. AT & T Corp.,* 185 F.R.D. 681, 685 (S.D.Fla.1998).

### A. Defendants' Objections to the Class Definition

 A court may address the adequacy of the class definition before analyzing whether the proposed class meets the Rule 23 requirements. *See e.g., Perez v. Metabolife Int'l, Inc.,* 218 F.R.D. 262, 269 (S.D.Fla. 2003) (addressing whether the class definition would require individualized determinations before addressing the Rule 23 requirements). Class definitions that are overly broad, vague, or which would require administratively difficult individualized determinations should be denied. *Id.* (citing *White v. Williams,* 208 F.R.D. 123, 129–30 (D.N.J. 2002)).

Defendants listed nine objections to the Plaintiffs' class definition. First, Defendants argue that between April 2007 and September 2007, ES 350s were equipped with a different part than Defendants believe that Plaintiffs' Complaint is based on. This argument fails because the Plaintiffs did not base their Complaint with respect to a specific part used prior to April 2007, but to the OCS in 2007 Lexus ES 350s and the replacement OCS when Defendants repaired them (Complaint ¶ 54). If the evidence eventually shows that the Plaintiffs cannot support a claim with regards to ES 350s equipped with the later OCS part, then the class definition may be modified at that point.

Second, Defendants argue that those who purchased an ES 350 in the resale market benefitted from any diminution in value attributable to the allegedly defective OCS. Defendants apparently base this on the assumption that the purchasers in the resale market knew of the alleged defect. This assumption runs counter to Plaintiff's allegations and is unsupported by evidence. Therefore, the objection also fails.

The third objection fails because it misunderstands the Plaintiff's class definition as including those who have since sold or traded their ES 350s, which it does not.

Fourth, Defendants object to the inclusion of lessees who are contractually obligated to arbitrate claims such as those in Plaintiff's Complaint.[2] Plaintiffs respond that Defendants have not provided any proof that there are other class members besides Mr. Rosen who have signed lease agreements containing arbitration clauses. Plaintiffs further argue that the possibility of arbitration clauses in the contracts should not preclude class certification, as other courts have certified classes in similar circumstances. *Coleman v. GM Acceptance Corp.*, 220 F.R.D. 64, 90–91 (M.D.Tenn.2004).

As Plaintiff has argued, that some of the class members claims may be affected by arbitration agreements does not make class certification inappropriate. We find that it would be more appropriate to create subclasses rather than deny certification outright. *See Collins v. Int'l Dairy Queen,* 168 F.R.D. 668, 677 (M.D.Ga.1996) (establishing subclasses where some of the class members had contracts containing arbitration provisions). Just as in *Collins,* the issue of whether arbitration should be compelled is not properly before this Court (in fact, it is not known how many class members' claims are arbitrable) though the issue may later arise. *Id.* at 678. We therefore find it appropriate to create a subclass of lessees whose lease agreements contain arbitration provisions.

Fifth, the Defendants argue the class definition is overly broad because it includes lessees, whose rights and interests are different than the owners because lessees pay a fixed price and do not suffer any diminution in value. The Court cannot make sense of this argument. If Plaintiffs' allegations are true, lessees are paying more for cars than they are worth, and are driving cars that have a defect; they therefore would be entitled to relief.

Sixth, Defendants put forth that in the case of a leased vehicle, there would be two potential class members, the lessee and the leasing company or lending institution owner of the car, whose interests are divergent or in conflict with each other. As Plaintiffs state in their Reply, this too is an issue that may be handled through the creation of subclasses. Creating a subclass of lessees would cure problems created by any divergent interests between lessees and owners.

Seventh, Defendants object that the class definition includes those who purchased or leased an ES 350 outside the state and have since moved to Florida. This is another misreading of the class definition, which only includes those who "who purchased or leased the vehicle *in* Florida." [DE 48, emphasis added]

Eighth, Defendants argue that the class should not include consumers who have violated their warranties by not providing notice to the Defendants of the alleged defects. This argument assumes that there are class members that had notice of the alleged defect but did not report it. Whether the warranties were violated goes to the merits of the case, and is not reason for this Court to deny class certification.

Ninth, Defendants argue that the class definition is not precise or adequate because it includes class members who have purchased it from unauthorized Lexus dealers who may have exposed the purchasers or lessees to representations that did not originate from the Defendants. While it is true that such purchasers or lessees may have been exposed to such representations, the claims in the Complaint, where they rely on representations, are based on those made by the Defendants. Defendants have failed to explain how representations by unauthorized dealers would relieve Defendants of their duties regarding their own representations. This argument also fails.

Therefore, we find that the proposed class definition is not vague or overbroad such that

---

**2.** In particular, Defendants complain that their counsel only received a copy of the Lease Agreement, which contains an arbitration provision, from Plaintiff Arnold Rosen on October 7, 2008.

If the Defendants wish to enforce the arbitration provision against Mr. Rosen, they must file a separate motion to compel arbitration, so that the issue may properly be before this Court.

we should deny certification, but we do find that it would be proper to create subclasses for lessees who have arbitration provisions in their lease agreements, and lessees who do not.

### B. Rule 23(a)(1): Numerosity

■■■ There is no rigid standard for determining numerosity. The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D.Fla.2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)). The focus of the inquiry is "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D.Fla.1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D.Fla. 2000). The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 665 (S.D.Ala.2005) (citing *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir.2004)). A court should also consider the "geographic dispersion of the class members, judicial economy and the ease of identifying the members of the class and their addresses." *Powers v. Government Emples. Ins. Co.*, 192 F.R.D. 313, 317 (S.D.Fla.1998).

■ In this case, there were 11,777 ES 350s were sold or leased for retail in Florida by July 11, 2007. Defendants argue that "only a portion" of those cars contained the original part in the OCS, and those manufactured after April 18, 2007 used a different part which did not function in the way that Plaintiffs complain about. As we discussed above, the Plaintiffs have alleged that the OCS was defective on the ES 350s, and did not limit their allegation to those ES 350s manufactured during a certain time period or with a particular part number. Therefore, that the ES 350s used a different part in their OCS after April 18, 2007 is not relevant for numerosity at this time. Even if it were, this Court could reasonably assume that a significant portion of the 11,777 cars were produced between March, 2006 and April 18, 2007, rather than between April 18, 2007 and July 11, 2007.

Defendants also argue that the low number of complaints they have received shows that the numbers is too few to warrant a class. This argument assumes that potential class members would all be aware of the alleged defect. Since it is possible that a significant number of ES 350 owners or lessees are unaware of the alleged defect in the car if we assume Plaintiffs allegations regarding Defendants' representations are true, the low number of complaints does not preclude a finding of numerosity.

We find that with thousands of potential class members, some of whom may have dispersed across the nation since purchasing or leasing an ES 350 in Florida, joinder of the proposed class members would be impractical, other than in a class action suit.

### C. Rule 23(a)(2) Commonality and Rule 23(b)(3) Predominance

Because there is considerable overlap between Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement, we address them together.

■ Rule 23(a)'s commonality prerequisite requires at least one issue common to all members of the class. However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D.Fla.1996). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D.Fla.2004); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D.Fla.2004); *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D.Fla.1991). However, "a class action must involve issues that are susceptible to class-wide proof." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir.2004) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001)).

■ Though similar to the commonality issue, the predominance requirement is "far more demanding." *Cooper*, 390 F.3d at 722; *see also, Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997). For Rule 23(b)(3), "it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir.2004). The court's inquiry is typically focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown v. SCI Funeral Servs. of Fla.*, 212 F.R.D. 602, 606 (S.D.Fla.2003). Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof. *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.1989). To conduct this inquiry, the Court must consider the cause of action and "what value the resolution of the class-wide issue will have in each member's underlying cause of action." *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir.2000).

■ Plaintiffs list eighteen issues which are common among the class. Most importantly, the class members would share the common issue of owning or leasing 2007 Lexus ES 350s, which contained allegedly defective OCSs in violation of warranties and fair trade practices. This central issue is common to all members within the Plaintiffs' class definition.

Defendants raise several issues that they feel preclude a finding of commonality. Most salient of these is the argument that Plaintiffs' claims require a finding of whether the putative class members relied on representations made by Defendants. There is currently a split in authority among Florida courts as to whether a showing of reliance by the consumer is necessary for certification of a class with a FDUTPA claim. *Davis v. Powertel Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000) (holding that it is not necessary); *Philip Morris USA Inc. v. Hines*, 883 So.2d 292, 294 (Fla. 4th DCA 2003) (criticizing *Powertel's* analysis that reliance is not necessary); *Black Diamond Properties, Inc. v. Haines,* 940 So.2d 1176, 1179 n. 1 (Fla. 5th DCA 2006) (same). When this Court addressed this issue in *Pop's Pancakes, Inc. v. NuCO2, Inc.*, Judge Graham, too, was critical of *Powertel*, although we found that case to be distinguishable from *Powertel* because *Powertel* involved a one-time interaction between the business and the consumer. *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 686–87 (S.D.Fla.2008). As the purchase of a car is not typically a simple affair, and purchasers and lessees may very well have relied on different representations made to them, this case too is distinguishable from *Powertel.* We also find the *Powertel's* conclusion that reliance is not necessary to be troublesome. We therefore find that commonality and predominance is lacking for the FDUTPA claims.

This does not, however, apply to Plaintiffs' breach of express warranty claims. Plaintiffs have claimed that Defendants have breached their express written warranties, and thus there are specific, and common, representations the Plaintiffs are basing their claims on. (*E.g.*, Complaint ¶ 52). Defendants have not argued that the written warranties differed in any material respect in with regard to different purchasers or lessees.

Defendants argue that each putative class members' experience with the cars is different, and that defeats a finding of commonality. For example, Defendants argue that use or maintenance of the car, and whether the OCS was in fact working properly, are differences that work against a finding of commonality. Defendants arguments fail because they are opposed to the allegations of the Plaintiffs' Complaint. The Plaintiffs allege that the cars were defective as purchased or leased, and thus use or maintenance should have no effect on the commonality of their claims. Also, the Plaintiffs allege that the problem with the OCS may be a design defect, such that if the OCS was working as designed, it would still be defective and Plaintiffs would be due relief.

The critical issue of whether the OCS in 2007 Lexus ES 350s was defective is common to all putative class members. With the exception of the issue of reliance in the

FDUTPA claims, this issue predominates over the individual issues. Defendants assert that there are several issues that would defeat an argument that the common issues predominate over the individual issues. The issues they present are similar to those they present to oppose a finding of commonality. Many of those issues are so related to the design of the OCS that we cannot find that they create the need for individualized mini-trials. For example, they argue that whether the alleged OCS failure to classify a passenger properly is attributable to some act or omission by the owner or passenger—for example, not sitting properly in the passenger seat would cause the OCS to determine there is no passenger. We find that it is a common issue as to whether the OCS should be able to determine there is an occupant in the passenger seat, even if the person is not sitting properly in the seat. Other issues the Defendants present relate to damages. We find these arguments unavailing, as the determination of diminution of value caused by the same alleged defect in the same year and model of car is a common issue, not an individual that defeats predominance.

We find that there exists commonality for all claims besides the claims under FDUT-PA, and that the common issues predominate over the individual issues.

### D. Rule 23(a)(3): Typicality

■ Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir.2001); *Prado–Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir.2000). A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001) (citing *Prado–Steiman*, 221 F.3d at 1279). "The test for typicality, like commonality, is

not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D.Fla.1996).

■ Plaintiff asserts that because Mr. Rosen has alleged damages that are typical of the other class members in that he alleges the same defect in his car as for the rest of the class. Defendants argue that the cases *Dennis v. Whirlpool Corp.*, Case No. 06–80784–CIV–RYSKAMP/VITUNAC (S.D.Fla. March 13, 2007) (Order Granting Motion to Dismiss), and *In re Canon Cameras Litigation*, 237 F.R.D. 357 (S.D.N.Y.2006) show that courts deny class certification in cases involving alleged defects in consumer products where there is no proof that the class members have suffered the same injury as the class representative.

The cases the Defendants cite are distinguishable on their facts. In *Whirlpool*, the Plaintiff's allegations surrounded manifestation of cracks in the class members' refrigerators. Here, the Plaintiffs are alleging that the OCS is defective in a way that would not necessarily be apparent to every car owner or lessee. *In re Canon Cameras Litigation* is distinguishable in that it was undisputed that the cause of the malfunction may have been "any of a variety of factors—many of which, such as customer misuse of the camera, would not result in manufacturer liability under any theory". 237 F.R.D. 357, 360. Here, the Plaintiffs have alleged that the cause of the defect originates from the design or manufacture. Defendants dispute that there is any defect, or that any apparent defect is a result of owners' or lessees' misuse, but those disputed issues rest squarely in the merits of the case.

Furthermore, there are several cases where typicality has been found in similar factual scenarios. *E.g. Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D.Cal. 2004) (finding typicality where the allegations were that the Defendants sold cars with defective engine intake manifolds to class members); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 447 (E.D.Pa.2000) (finding typicality when the plaintiff alleged a class action against a defendant for manufacturing and selling cars with a defective paint job); *Joseph v. General Motors Corp.*, 109 F.R.D.

635, 640–41 (D.Colo.1986) (finding that plaintiff showed typicality in a class action suit against a defendant for design defects in the engine of the defendant's cars).

We therefore find that Mr. Rosen's claim is typical of that of the proposed class members.

### E. Rule 23(a)(4): Adequacy of Representation

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Solutions Group, Inc.*, 206 F.R.D. 514, 516 (M.D.Fla. 2002); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987). In addition, this may include an examination of the chosen class counsel, especially if there is a potential conflict of interest. *London v. Wal–Mart Stores*, 340 F.3d 1246, 1253 (11th Cir.2003) (discussing cases in which class certification properly denied in instances such as where a named plaintiff's brother was class counsel, and where a named plaintiff was employee of class counsel).

Plaintiff puts forth that Mr. Rosen is motivated and capable of pursuing the interests of the class, and that Mr. Rosen's counsel belongs to a prominent and experienced plaintiffs' law firm. Defendants argument against adequacy is that Mr. Rosen signed a lease agreement that contains a binding arbitration provision and a provision abdicating rights to participate in a class action. Plaintiffs respond that the Defendants have waived arbitration by not enforcing the arbitration provision earlier in this case.

Mr. Rosen first filed suit against Defendants in July, 2007. Up to this point, Defendants have not attempted to enforce the arbitration provision. It is questionable whether Defendants may still do so, as "[w]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. West of Eng. Ship Owners Mut. Protection & Indem. Assoc.*, 62 F.3d 1356, 1366 (11th Cir.1995). As we stated above, the issue is not properly before this Court. As doubts are to be resolved in favor of certification, we find that the arbitration provision does not yet present a bar to Mr. Rosen as class representative.

We find that Plaintiffs have met the adequacy requirement of Rule 23(a)(4).

### F. Rule 23(b)(3)

Rule 23(b)(3) has two requirements: that questions of common fact or law predominate over individual issues, and that class action litigation is the superior method for fair and efficient adjudication of the claims. Fed. R.Civ.P. 23(b)(3). The predominance requirement was discussed above in section II.C.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3); *see also, De Leon–Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1220 (11th Cir.2007).

Plaintiffs argue that a class action is superior in this case because of the dispersion of class members, and the economy of time, effort, and expense. They also state that they have no knowledge of any other lawsuits regarding the issues in this action. Defendants have not argued against the superiority of a class action to other means of resolving the dispute. Individual suits on these claims would be an inefficient use of the time, energy and resources of the Court, witnesses, experts and attorneys. We find that Plain-

tiffs have made a sufficient showing that a class action is the superior method for adjudicating this controversy. Since we found above at II.C that the Plaintiffs have shown predominance of common issues, the Plaintiffs have fulfilled the requirements under Rule 23(b)(3).

### G. Rule 23(b)(2)

█ Rule 23(b)(2) allows for a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). "Generally applicable" means the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity ... [directed] to all members." *Leszczynski, et al. v. Allianz Insurance*, 176 F.R.D. 659, 673 (S.D.Fla.1997) (quoting 7A C. Wright, A. Miller, & M. Kane, *Federal Practice*, section 1775 at 449). Though the predominant relief must be injunctive or declaratory relief, monetary damages may also be sought in a Rule 23(b)(2) class action as incidental relief. *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir.2001). In *Allison v. Citgo Petroleum Corporation*, the Fifth Circuit explained:

> By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief.... Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.... Liability for incidental damages should not ... entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir.1998); accord *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir.2001).

█ Plaintiff seeks, in the alternative, to bring a "hybrid" class action, for both monetary damages and injunctive relief. "A hybrid Rule 23(b)(2) class action is one in which class members seek individual monetary relief ... in addition to class-wide injunctive or declaratory relief." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir.1986). A hybrid or Rule 23(b)(2) class action is not appropriate where the " 'appropriate relief relates exclusively or predominantly to monetary damages.' " *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir.1983) (quoting Fed.R.Civ.P. 23(b)(2) Advisory Committee Notes (1966 Amendment)). If the declaratory relief is merely incidental to the monetary damages, then a Rule 23(b)(2) action is inappropriate, as is a hybrid class action. *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 701–02 (S.D.Fla.2004); *Swanson v. Mid Am. Inc.*, 186 F.R.D. 665, 668–69 (M.D.Fla.1999).

Plaintiffs state that the primary remedies they seek are injunctive, and therefore this suit is appropriate for class action under rule 23(b)(2). They also state that the monetary damages they seek are incidental to the injunctive remedies they seek. Defendants respond that most of the relief the Plaintiffs seek is monetary and is not incidental to the requests for injunctive or declaratory relief.

Plaintiffs phrase much of the relief they seek in terms of injunctions or declaratory judgments. However, requests for an injunction that the Defendants "offer rescission to the plaintiffs by returning the full costs paid for purchase or lease of the defective vehicles" or "reimburse plaintiffs for all costs" are, in effect, requests for monetary damages. (Complaint, *ad damnum* clause).[3] Yet Plaintiffs do request actual injunctive or declaratory relief, such as an injunction ordering recall of the cars or ordering repair at no cost. Still, the Court cannot say that the

---

**3.** Plaintiffs' *ad damnum* clause of Complaint requests: compliance with written and implied warranties; offer of rescission or repair; recall of the defective cars; reimbursement of costs of purchase, replacement, or repair of the OCS; notice to class members of the defect; award of restitution; "appropriate declaratory relief"; litigation and attorneys' fees and costs. Of the twenty counts in Plaintiffs' complaint, fifteen allege some form of monetary damages.

monetary damages are merely incidental to the injunctive or declaratory relief.

Since Plaintiff only sought hybrid class certification as an alternative to certification under Rule 23(b)(2) or (b)(3), and we have already determined that the claims that survived the Rule 23(a) analysis also passed the Rule 23(b)(3) analysis, we need not determine if this class is appropriate for hybrid class designation.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Class Certification [DE 48] is hereby **GRANTED in part** with respect to claims for breaches of express and implied warranties and for injunctive and declaratory relief (Counts I, II, III, V, VI, VII, IX, X, XI, XIII, XIV, XVI, XVII, XVIII, XX), and **DENIED in part** with respect to the claims under FDUTPA (Counts IV, VIII, XII, XV, XIX);

2. The Court hereby certifies a class pursuant to Fed.R.Civ.P. 23(b)(3) consisting of:

 (a) a Class of every owner or lessee of a 2007 Lexus ES 350 who purchased or leased the vehicle in Florida;

 (b) Subclass I of every member of the Class whose lease agreement contained arbitration provisions; and

 (c) Subclass II of every member of the Class whose lease agreement contained no arbitration provision;

3. Arnold Rosen is hereby certified as Class representative;

4. The law firm of Sheldon J. Schlesinger, P.A. is hereby certified as Class counsel;

5. Plaintiffs shall file a proposed notice to class members for approval by the Court no later than February 9, 2009. Defendants shall have until February 20, 2009 to file objections to Plaintiffs' proposed notice.

### ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

THIS CAUSE is before the Court upon the Defendants' Motion for Reconsideration of Order on Plaintiffs' Motion for Class Certification [DE 119] filed on February 3, 2009.

The Court has carefully considered the Motion, the Plaintiffs' Response [DE 152], the Defendants' Reply in Support of Its Motion [DE 158], the parties' exhibits and affidavits, and is otherwise fully advised in the premises. This Order memorializes the Order the Court made from the bench at calendar call on April 24, 2009.

On January 26, 2009, this Court granted in part the Plaintiffs' Motion for Class Certification. [DE 104]. Defendants seek for this Court to reconsider its Order and de-certify the class and sub-classes. As grounds for reconsideration, Defendants argue that the Court did not properly consider its arguments concerning the superiority of a class action and that newly discovered evidence is fatal to Plaintiffs' ability to maintain a class.

███ "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D.Fla.2002) (internal citations omitted). Three major grounds justify reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F.Supp.2d 1316, 1331 (M.D.Fla.1999); *Sussman v. Salem Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994)). For a court to reconsider its prior judgment the moving party must present facts or law of a "strongly convincing nature" that would induce a court to reverse its prior decision. *Id.* (citing *Sussman*, 153 F.R.D. at 694).

Defendants have noted that this Court did not properly address their arguments concerning superiority of a class action in its Order Granting Plaintiffs' Motion for Class Certification. In our previous Order, we addressed those arguments only in the context of predominance as Defendants had combined the two issues. We address those arguments now in the context of whether a class action is the superior method of adjudication.

Defendants argue that the issues in this case would require highly individualized

mini-trials. They cite *In re Canon Cameras Litigation, Dennis,* Case No. 06–80784–CIV–RYSKAMP, *Montgomery v. The New Piper Aircraft,* and *Partain v. First Nat'l Bank.* In those cases, a class action would not have been the superior method of adjudication because of the individual issues. However, they are distinguishable from the instant case. *Canon* is distinguishable because, in that case, the plaintiffs could only show that there was a malfunction in a "tiny fraction" of the cameras and it was undisputed that a variety of factors for which the manufacturer would not be liable could have caused the malfunction. 237 F.R.D. 357, 359–360 (S.D.N.Y.2006). Here, the defect may not be noticed by many car owners, and Plaintiffs have since presented expert evidence that the defect is likely to have occurred in a large number of Lexus ES 350s. [DE 142–2, Affidavit of William Gest]. *Montgomery* is distinguishable in that the nationwide class would give rise to the application of the differing laws of many states, and the claims relied on oral representations inappropriate for treatment as a class action. *Montgomery,* 209 F.R.D. 221, 229–30 (S.D.Fla.2001).

Defendants also cite *Jones v. Jeld–Wen, Inc.* That case is also distinguishable, in that 16 putative class members sought to be excluded from the class, indicating that the class members in that case "would prefer to litigate the issues on their own." 250 F.R.D. 685, 695 (S.D.Fla.2008). Furthermore, that case involved individual issues such as determining whether the alleged defect was the cause of damages in "each pane of glass, on a house by house basis." *Id.* Similarly, other cases the Defendants cite are distinguishable. *Kia Motors Am. Corp. v. Butler,* 985 So.2d 1133, 1140–41 (Fla. 3d DCA 2008) (causation would have to be an individualized fact inquiry as to use, experience, and repair of cars as the issues included whether brake pads had unacceptably high rates of "noise, vibration, judder, pulsation, and . . . life-wear" deficiencies); *Volkswagen of Am., Inc. v. Sugarman,* 909 So.2d 923, 924 (Fla. 3d DCA 2005) (individual inquiries were required to find the circumstances of accidents in order to determine whether there was causation from an alleged defect to vehicle bumper damage).

We therefore find that a class action is the superior method of adjudication of this case.

Plaintiffs and Defendants are at odds as to whether the evidence Defendants produced in their Motion for Reconsideration is actually "newly discovered evidence." As we are denying the Defendants' Motion even if we consider the evidence Defendants present, we need not decide if the evidence is actually newly discovered.

Defendants argue that new evidence shows that some of the Plaintiffs admit to having been aware of the defect without reporting it as required by their express warranties. According to Defendants, this individualized inquiry is fatal to class certification. This point essentially reargues a point Defendants made in their Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification [DE 53] and we rejected [DE 104], and is therefore inappropriate in a Motion for Reconsideration. *Z.K. Marine, Inc. v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla. 1992). However, even after considering the evidence, we find that the notice issue presented by the Defendants is an argument that goes entirely to the merits of this case. Defendants also point to evidence that some Plaintiffs did not experience the alleged defect. However, as Plaintiffs are alleging a defect that is latent and would not be known to all car owners depending on their use of the vehicle, this argument also fails.

Defendants also attack the expert evidence of William Gest and David Potts in establishing whether there was a defect. Again, this argument addresses the merits of the case and is inappropriate to decide at this stage. However, we note that this Court has since ruled that William Gest's testimony regarding the alleged defect is admissible. [DE 174].

Defendants also argue that several Plaintiffs concede that they did not incur any damages. The evidence that Defendants point to with regards to Plaintiffs Arthur Garter and Jerome Myer actually question whether they are appropriately members of the class, as both concede to not having been damaged as they were no longer owners or lessees of a 2007 Lexus ES 350. [DE 89, pp. 70–71; DE 90, pp. 119–120]. As for Plaintiff

Carola Zanelli, the third Plaintiff to whom Defendants refer, she actually stated that she believed she did incur damages. [DE 93, pp. 63–64]. Also, whether there are any actual damages from the alleged defect is a question that is inappropriate to determine at the class certification stage. Finally, Defendants' arguments regarding whether 2007 Lexus ES 350s market data reveal a decrease in value addresses the merits of the case more than whether class certification is appropriate.

Accordingly, it is **ORDERED AND AD-JUDGED** that the Defendants' Motion for Reconsideration of Order on Plaintiffs' Motion for Class Certification [DE 119] is hereby **DENIED**.

### ORDER GRANTING PLAINTIFFS' MO-TION FOR RECONSIDERATION OF THE DENIAL OF CLASS CERTIFI-CATION ON PLAINTIFFS' FDUTPA CLAIMS

THIS CAUSE is before the Court upon the Plaintiffs' Motion for Reconsideration of the Denial of Class Certification on Plaintiffs' FDUTPA Claims [DE 120] filed on February 3, 2009. The Court has carefully considered the Motion, the Defendants' Response [DE 137], the Plaintiffs' Reply [DE 149], and is otherwise fully advised in the premises.

On January 26, 2009, this Court granted in part and denied in part the Plaintiffs' Motion for Class Certification. [DE 104]. Plaintiffs seek for this Court to reconsider its denial of class certification for their FDUTPA claims. As grounds for reconsideration, Plaintiffs make several arguments. Most important among these arguments is that this Court misapplied Florida law to the facts of this case.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D.Fla.2002) (internal citations omitted). Three major grounds justify reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Offices Togo-*

*lais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F.Supp.2d 1316, 1331 (M.D.Fla.1999); *Sussman v. Salem Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994)). For a court to reconsider its prior judgment the moving party must present facts or law of a "strongly convincing nature" that would induce a court to reverse its prior decision. *Id.* (citing *Sussman*, 153 F.R.D. at 694).

In this Court's Order, we stated that "[t]here is currently a split in authority among Florida courts as to whether a showing of reliance by the consumer is necessary for certification of a class with a FDUTPA claim." [DE 104]. As authority to indicate that there was a split, we cited *Black Diamond Properties, Inc. v. Haines, Philip Morris USA Inc. v. Hines*, and *Davis v. Powertel Inc.*, while disagreeing with the conclusions of the latter case. *Davis v. Powertel Inc.* specifically found that "proof of reliance is unnecessary" to maintain a FDUTPA action. 776 So.2d 971, 975 (Fla. 1st DCA 2000). *Black Diamond* and *Philip Morris* both questioned whether *Powertel* properly considered the causation element of a FDUTPA action. *Black Diamond*, 940 So.2d 1176, 1179 n. 1 (Fla. 5th DCA 2006); *Philip Morris*, 883 So.2d 292, 294 (Fla. 4th DCA 2003). We also cited *Pop's Pancakes, Inc. v. NuCO2, Inc.* as a case in which this Court had expressed disapproval of *Powertel*. *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 686–87 (S.D.Fla.2008).

Having again reviewed the case law from the Florida District Courts of Appeal and our own Court regarding the need to show reliance in a FDUTPA claim, we find that our previous Order was in error. While *Black Diamond* and *Philip Morris* both criticized *Powertel*, both also distinguished the case such that neither needed to specifically rule whether reliance was as element of a FDUTPA claim. *Black Diamond*, 940 So.2d at 1179; *Philip Morris*, 883 So.2d at 294. Both found other circumstances in the cases created individual issues that would predominate over the common issues. *Black Diamond*, 940 So.2d at 1179 (each plaintiff needed to demonstrate that a misrepresentation occurred and actually caused damage); *Philip Morris*, 883 So.2d at 294 (common issues did

not predominate over individual issue of whether each plaintiff actually bought "light" cigarettes for the allegedly deceptive health-related claims). Other Florida cases have also ruled that reliance is not an element of a FDUTPA claim. *Egwuatu v. South Lubes, Inc.*, 976 So.2d 50, 52 (Fla. 1st DCA 2008) [1]; *Turner Greenberg Assocs. v. Pathman*, 885 So.2d 1004, 1009 (Fla. 4th DCA 2004) (ruling that individual showings of reliance are not necessary in FDUTPA class actions, and not mentioning the Fourth DCA's earlier questioning of *Powertel* in *Philip Morris*); *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 703 (Fla. 3rd DCA 2000). Finally, although Judge Graham of this Court expressed disapproval of *Powertel* in *Pop's Pancakes*, he found that class certification was inappropriate regardless of whether reliance was a necessary element. 251 F.R.D. 677, 686–87. Earlier, however, Judge Altonaga of this Court specifically held that reliance was not an element of a FDUTPA claim and cited *Powertel* in support. *Gold Coast Racing, Inc. v. The Home Depot USA, Inc.*, 2006 WL 4579688 *2 (S.D.Fla.2006).

Furthermore, the nature of this claim is more in line with the facts of *Powertel* than it is with *Black Diamond* or *Philip Morris*. *Powertel* concerned the failure to disclose a characteristic of a product that reduced the product's overall value (i.e., that the mobile phones at issue were programmed to work only with the defendant's wireless network). 776 So.2d at 972. While Plaintiffs have alleged affirmative misrepresentations, they have also alleged that the Defendants failed to disclose a characteristic of the product (i.e., the alleged OCS defect in the 2007 Lexus ES 350s) that would reduce the product's overall value. Both *Black Diamond* and *Philip Morris* are distinguishable from this case. *Black Diamond* was a case of "500 separate oral contract transactions" that would require the testimony of each plaintiff.

940 So.2d at 1178–79. The court in *Philip Morris* ruled that the case was unsuitable for class certification because individual issues of whether the smoker purchased the "light" cigarettes for health value or taste value, and whether the smoker used the cigarettes in a way that would negate the health benefits of light cigarettes. 883 So.2d at 295. Neither situation exists in this case. The alleged deceptive or unfair trade practice is the failure to disclose a defect; Defendants deny that there is any defect and do not argue that they ever made any disclosure of one. Thus, whatever differences there may have been in the affirmative representations made, the common issues necessary to maintain Plaintiffs' FDUTPA claims would still be present and would predominate over the individual issues.

Defendants argue that this Court "must decide the case the way it appears the state's highest court would." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir.2001). Because the Supreme Court of Florida has not ruled on whether reliance is an element of a FDUTPA claim, we are to make an "educated guess" as to how the Supreme Court of Florida would rule. *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir.1990). Defendants argue that it was within our prerogative to find that the Supreme Court of Florida would have ruled that reliance was an element.[2] We agree that it was within our prerogative to come to make an educated guess as to how the Supreme Court of Florida would rule. Nevertheless, having again reviewed the case law of Florida and this Court, we find that it was clear error to have ruled that reliance is an element of a FDUTPA claim.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

---

1. Defendants argue that this case limited *Powertel* to its facts. However, the court in *Egwuatu* unequivocally stood behind its decision that reliance is not an element of a FDUTPA claim. 976 So.2d at 53 n. 1. The court did distinguish *Powertel* because *Egwuatu* involved individual issues of each customer's knowledge of whether a fee was a tax, and ultimately denied class certification. *Id.* at 53.

2. Defendants also emphasize the language of FDUTPA: "In any action brought by a person *who has suffered a loss as a result of a violation of this part*, such person may recover actual damages." Fla. Stat. § 501.211(2) (Defendants' emphasis). We find that this language clearly requires causation; however, reliance and causation are not the same.

1. Plaintiffs' Motion for Reconsideration of the Denial of Class Certification on Plaintiffs' FDUTPA Claims [DE 120] is hereby **GRANTED**;

2. The portion of this Court's January 26, 2009 Order [DE 104] denying class certification to Plaintiffs' claims under FDUTPA is hereby **VACATED**;

3. The Court hereby certifies the class defined in our previous Order [DE 104] for Plaintiffs' FDUTPA claims (Counts IV, VIII, XII, XV, XIX), and the class remains certified for Plaintiffs' claims of breaches of express and implied warranties and for injunctive and declaratory relief (Counts I, II, III, V, VI, VII, IX, X, XI, XIII, XIV, XVI, XVII, XVIII, XX).